Hermogenes MOJICA et al., Plaintiffs,

v.

AUTOMATIC EMPLOYEES CREDIT
UNION et al., Defendants.

No. 72 C 686.

United States District Court,
N. D. Illinois, E. D.

Aug. 16, 1973.

James O. Latturner, Michael Fitch, Chicago, Ill., for plaintiffs.

Max E. Wildman, Chicago, Ill., for Wood Acceptance Corp.

Kvistad & Dunn, Chicago, Ill., for Automatic Employees Credit Union.

Harris, Burman, & Silets, Chicago, Ill., for Car Credit Corp. and Overland Bond Investment Corp.

Gann, McIntosh, Flaherty, & Parker, Chicago, Ill. and William B. Davenport and Albert E. Jenner, Jr., Jenner & Block, Chicago, Ill., for Mercantile National Bank.

Aaron J. Kramer, Chicago, Ill., for Ford Motor Credit Co., amicus curiae.

Tenney, Bentley, Howell, Askow, & Lewis, Chicago, Ill., for Illinois Bankers Assn., amicus curiae.

Before SWYGERT, Chief Judge, and AUSTIN and McGARR, District Judges.

### MEMORANDUM OPINION and JUDGMENT ORDER

AUSTIN, District Judge.

This action seeks a declaratory judgment that the automobile repossession and resale provisions of the Illinois Com-

mercial Code are unconstitutional and further requests a permanent injunction against their enforcement. Plaintiffs contend that the statutes in question violate their rights, under the fourth, fifth, and fourteenth amendments, to notice, an opportunity to be heard, and an impartial determination of right to title before repossession of an automobile. Since a permanent injunction of state statutes is sought, a three-judge district court was convened pursuant to 28 U.S.C. §§ 2281 and 2284 (1970).

Plaintiffs' amended complaint contains six counts. Count I, pleaded as a plaintiffs [1] and a defendants [2] class action, asserts the invalidity of Ill.Rev. Stat., ch. 26, §§ 9—503 and 9—504.[3] Count II alleges a plaintiffs' class action [4] and challenges the constitutionality of Ill.Rev. Stat., ch. 95½, §§ 3—114(b), 3—116(b), and 3—612.[5] Counts III, IV, and V demand compensatory and punitive damages to Plaintiffs Mojica, Gonzalez, and Barnett respectively. The final count alleges, on behalf of Mojica individually, violations by Defendant Credit Union of the federal Truth in Lending Act, 15 U.S.C. 1601 et seq. (1968). Counts III and VI, both relating to Plaintiff Mojica, were dismissed with prejudice by stipulation of parties.

An examination of the pleadings and other relevant papers submitted by the four representative plaintiffs reveals that three of them—Mojica, Gonzalez, and Barnett—allege almost identical factual situations. In each case, the debtor-plaintiff granted the creditor-defendant a purchase money security interest in a used automobile. In each case the defendant summarily repossessed the car, applied for and received repossession title, and resold it to a third party not involved in this litigation. And, in each case, plaintiff alleges that he was not in default at the time his automobile was repossessed.

Banks, the fourth representative plaintiff, also. granted a defendant a purchase money security interest in his car. However, no repossession occurred and Banks' sole claim in this action is his anticipated "fear" that his automobile will be repossessed in violation of the Illinois Commercial Code. In fact, when this suit was instituted, Banks was immediately released by his creditor from all obligations under his security agreement and note of indebtedness.

Upon consideration of the posture of this case and the contentions of the various parties, we conclude that the amended complaint must be dismissed because the plaintiffs—individually as well as representatively—lack standing to maintain this action.

### I.

█ The Commercial Code expressly conditions a creditor's right to repossession upon the existence of an actual, bona fide default. Ill.Rev.Stat., ch. 26, §§ 1—203, 9—501(1), 9—503, 9—504.

---

1. The Count I plaintiffs' class is defined as " . . . all persons who are debtors under security agreements involving motor vehicles and who have had or may have their automobiles or other motor vehicles repossessed for an alleged default, without prior notice or an opportunity to be heard." Amended Complaint, Count I, ¶ 3.

2. Amended Complaint, Count I, ¶ 4 defines the defendants' class as " . . . all persons who are secured parties within the meaning of Ill.Rev.Stats. ch. 26, § 9—105(1) and who may, upon their unilateral determination of default by debtor-obligees, seek to recover possession and dispose of the collateral governed by such security agreements pursuant to and under color of Illinois Revised Statutes ch. 26, § 9–503 and 4."

3. See Appendix.

4. The Count II, ¶ 4 class of plaintiffs includes " . . . all persons who are debtors under security agreements invoking [sic] motor vehicles and who have had or may have their automobiles or other motor vehicles repossessed and sold for an alleged default without prior notice and an opportunity to be heard and whose certificate of title has been or will be terminated and transferred by the Secretary of State."

5. See Appendix.

Moreover, use of Ill.Rev.Stat., ch. 95½, §§ 3—114(b), 3—116(b) and 3—612 is contingent upon a lawful and proper transfer of interest in the automobile. Taking their complaint at face value, the transaction of which each plaintiff complains involved a violation (or, as to Banks, a feared violation) of the statutes plaintiff challenges. Indeed, each plaintiff whose car was repossessed charges that his creditor-defendant acted with malice and seeks punitive damages.

Thus, in a case where they assert that the repossession and resale provisions of the Illinois Code were used *improperly* and *maliciously* against them, plaintiffs ask this Court to determine the validity of these statutes when *properly* applied to debtors *actually in default.* We must decline. Such a context is hardly appropriate for the resolution of the constitutional issues plaintiff presents. The courts that have reached these constitutional arguments have done so only after careful consideration of their jurisdictional basis. See Adams v. Egley, 338 F.Supp. 614 (S.D.Cal.1972), Oller v. Bank of America, 342 F.Supp. 21 (W.D. Cal.1972), McCormick v. First National Bank of Miami, 322 F.Supp. 604 (S.D. Fla.1971).

We recognize full well that our insistence upon proper parties and proper procedure avoids what might otherwise be a meritorious claim. But we also recognize the danger of deciding such questions on inappropriate records. The impropriety of hypothetical determinations concerning the proper application of a statute wrongly applied in the given case have led the courts to uniformly decline to make decisions such as plaintiff seeks. Oil Workers Unions v. Missouri, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed. 2d 373 (1960); Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); DeKorwin v. First National Bank, 275 F.2d 755 (7th Cir. 1960).

In Illinois, there is only one road to repossession and that road winds its way through §§ 9—503 and 9—504.

Any taking that does not comply with these sections is unlawful and subjects the taker to criminal and civil liability. If plaintiffs' allegations in the amended complaint are accurate, actions may sound for conversion or for recovery under the generous damage provisions of Ill.Rev.Stat., ch. 26, § 9—507(1). Even their punitive damages may be sustainable. But, under their present status, they do not possess standing to assert these constitutional claims. See Dash v. Mitchell, 356 F.Supp. 1292 (D.D.C. 1972).

## II.

A further bar to plaintiffs' constitutional claims must be noted. Counts I and II of the amended complaint seek the extraordinary remedies of declaratory and injunctive relief. Each of the named plaintiffs, however, lacks standing to request such relief. Indeed, even if this court granted plaintiffs the remedies they seek in these Counts, not one of them would benefit thereby.

It is highly questionable whether Plaintiff Banks ever had standing to maintain this action:

"The mere intention to take some action at some time in the future, which might or might not occur, and which if it does occur might present a situation coming under the Civil Rights Act does not present any justiciable question under the Civil Rights Act . . . . "

Progress Dev. Corp. v. Mitchell, 182 F. Supp. 681, 713 (W.D.Ill.1960), rev'd in part on other grounds, 286 F.2d 222 (7th Cir. 1961). Moreover, when Banks was released by his defendant from all obligations, he received all the relief to which he was entitled. Accordingly, he no longer has standing under the principles of Watkins v. Chicago Housing Authority, 406 F.2d 1234 (7th Cir. 1969) and Dale v. Hahn, 440 F.2d 633 (2d Cir. 1971). *See also* Crimmins v. American Stock Exchange, 346 F.Supp. 1256 (S.D. N.Y.1972).

■ The automobiles of Plaintiffs Barnett and Gonzalez were repossessed and resold, with titles transferred, before either party joined this action. It is well established that "if the act to be enjoined has already been committed, equity will not interfere, since the granting of an injunction under such circumstances would be a useless act." 1 High on Injunctions § 23 (4th ed. 1905) (citing cases). Granting declaratory and injunctive relief to these plaintiffs, then, would be a "useless act." *See* Todd v. Joint Apprenticeship Committee, 332 F. 2d 243 (7th Cir. 1964), cert. denied, 380 U.S. 914, 85 S.Ct. 880, 13 L.Ed.2d 800 (1965), McKee & Co. v. First National Bank, 397 F.2d 248 (9th Cir. 1968), and Manion v. Holtzman, 379 F.2d 843 (7th Cir.), cert. denied, 389 U.S. 976, 88 S.Ct. 479, 19 L.Ed.2d 470 (1967). Each of these cases held that injunctive relief would not issue where the act sought to be enjoined was completed after the suit was filed. It follows that standing to seek such relief must be lacking where the challenged event was completed before the claim was instituted.

Similar considerations apply to Plaintiff Mojica, the only representative whose car was resold with title transferred after the filing of this suit. Since his automobile was resold during this litigation, both declaratory and injunctive relief would be "useless acts". *See Todd, McKee,* and *Manion, supra.*

### III.

■ One of the primary requirements of a class action is that the party maintaining the suit must be a member of the class he seeks to represent. Fed.R.Civ.P. 23(a); 7 C. Wright & A. Miller, Federal Practice and Procedure, § 1761; Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). Since plaintiffs here lack standing themselves, they certainly cannot represent others. This conclusion results from a fair reading of Fed.R.Civ.P. 23(a) which requires such litigants to be actual representatives of their class. Indeed, Rule 23(a)(4) states that representatives must "fairly and

adequately protect the interests of the class." It can hardly be said that these plaintiffs—unable to obtain standing for themselves—will provide adequate representation for those alleged to be similarly situated. Kaufman v. Dreyfus Fund, Inc., 434 F.2d 727, 734 (2d Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); Fitzgerald v. Kriss, 10 F.R.D. 51 (N.D.N.Y.1950); Watkins v Chicago Housing Authority, 406 F.2d 1234 (7th Cir. 1969). Accordingly, plaintiffs fail to meet the essential tests of Rule 23(a) and class action standing.

### IV.

Since we conclude that all plaintiffs in this case fail to present a claim which can be reached on the merits, the amended complaint is dismissed.

### APPENDIX

Ill.Rev.Stat., ch. 26, § 9—503. Secured Party's Right to Take Possession After Default.

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.

If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under Section 9—504.

Ill.Rev.Stat., ch. 26, § 9—504. Secured Party's Right to Dispose of Collateral After Default; Effect of Disposition.

(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the Article on

Sales (Article 2). The proceeds of disposition shall be applied in the order following to

(a) the reasonable expenses of retaking, holding, preparing for sale, selling and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party;

(b) the satisfaction of indebtedness secured by the security interest under which the disposition is made;

(c) the satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. If requested by the secured party, the holder of a subordinate security interest must seasonably furnish reasonable proof of his interest, and unless he does so, the secured party need not comply with his demand.

(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency. But if the underlying transaction was a sale of accounts, contract rights or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides.

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this State or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

(4) When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interests even though the secured party fails to comply with the requirements of this Part or of any judicial proceedings·

(a) in the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; or

(b) in any other case, if the purchaser acts in good faith.

(5) A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this Article.

Ill.Rev.Stat., ch. 95½, § 3—114(b)

If the interest of the owner is terminated or the vehicle is sold under a security agreement by a lienholder named in the certificate of title, the transferee

shall promptly mail or deliver within fifteen (15) days to the Secretary of State the last certificate of title, his application for a new certificate in the form the Secretary of State prescribes, and an affidavit made by or on behalf of the lienholder that the vehicle was repossessed and that the interest of the owner was lawfully terminated or sold pursuant to the terms of the security agreement. If the lienholder succeeds to the interest of the owner and holds the vehicle for resale, he must secure a new certificate of title and upon transfer to another person, shall deliver to the transferee the properly assigned certificate.

Ill.Rev.Stat., ch. 95½, § 3—116(b)

The Secretary of State, upon receipt of an application for a new certificate of title by a transferee other than by voluntary transfer, with proof of the transfer, the required fee and any other documents required by law, shall issue a new certificate of title in the name of the transferee as owner. If the outstanding certificate of title is not delivered to him, the Secretary of State shall make demand therefor from the holder thereof.

Ill.Rev.Stat. ch. 95½, § 3—612. Repossessor plates.

The Secretary, upon receipt of an application, made on the form prescribed by the Secretary of State may issue to financial institutions, to lending institutions and to persons engaged in the business of repossessing motor vehicles for others in situations where the motor vehicle is the security for the funds, special plates which may be used by such financial institutions, lending institutions and repossessors solely for the purpose of operating the motor vehicles which are repossessed by such repossessors upon a default in the contract.

Said special plates shall, in addition to the legends provided in Section 3—412 of this Act, contain a phrase "repossessor" and such other letters or numbers as the Secretary of State may prescribe. If an applicant for such plates is engaged in repossessing vehicles for other

persons and does not hold a certificate, registration or permit from the Illinois Commerce Commission to conduct such an operation, the application shall be denied.