GONZALEZ *v.* AUTOMATIC EMPLOYEES CREDIT
UNION ET AL.

No. 73–858.   Argued October 21, 1974—Decided December 10, 1974

STEWART, J., delivered the opinion for a unanimous Court.

*James O. Latturner* argued the cause and filed briefs for petitioner.

*Albert E. Jenner, Jr.,* argued the cause for appellee Mercantile National Bank of Chicago. With him on the brief were *William B. Davenport, Keith F. Bode,* and *Daniel R. Murray.*

MR. JUSTICE STEWART delivered the opinion of the Court.

This is an appeal under 28 U. S. C. § 1253 from an order of a three-judge court dismissing the appellant's complaint for lack of "standing."[1] We deferred consideration of our jurisdiction until the hearing on the merits. 415 U. S. 947. For the reasons that follow, we have concluded that the District Court's order is not directly appealable to this Court.

## I

The appellant Gonzalez and three other named plaintiffs brought a class action in the District Court attacking as unconstitutional various provisions of the Commercial Code and Motor Vehicle Code of Illinois governing repossession, retitling, and resale of automobiles purchased on an installment basis under security agreements.[2] The plaintiffs alleged that the statutory scheme violated a debtor-purchaser's rights—under the Fourteenth, Fourth, and Fifth Amendments to the United States Constitution—to notice, hearing, and impartial determination of contractual default prior to repossession of the car, trans-

---

[1] *Mojica* v. *Automatic Employees Credit Union,* 363 F. Supp. 143.

[2] Ill. Rev. Stat., c. 26, §§ 9–503 and 9–504, and Ill. Rev. Stat., c. 95½, §§ 3–114 (b), 3–116 (b), and 3–612.

fer of title to the secured party, or resale of the car by the secured party. The plaintiffs sought a declaratory judgment to this effect, a permanent injunction, and compensatory and punitive damages for past violations of their alleged constitutional rights. A three-judge court was convened pursuant to 28 U. S. C. § 2281.[3]

The named plaintiffs sought to represent the class of all debtor-purchasers, under security agreements involving motor vehicles, "who have had or may have their automobiles or other motor vehicles repossessed and sold for an alleged default without prior notice and an opportunity to be heard and whose certificate of title has been or will be terminated and transferred by the Secretary of State." The named defendants were the Secretary of State of Illinois, responsible for transferring title under the challenged statutes, and five organizations operating as secured creditors in the motor vehicle field. The complaint also designated a defendant class, consisting of all secured creditors who may, "upon their unilateral determination of default by debtor-obligees," seek to repossess, and to dispose of, motor vehicles under the challenged statutes.

The pleadings and supplementary documents showed that Gonzalez had purchased a car on a retail installment contract, which had later been assigned to the defendant-appellee, Mercantile National Bank of Chicago (Mercantile). Before Gonzalez joined this lawsuit, Mercantile had repossessed the car, resold it to a third party, and ar-

---

[3] Section 2281 provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

ranged a title transfer to that party through the office of the Secretary of State. The complaint alleged that all of this had been done without notice to Gonzalez, and that he had not in fact been in default under the installment contract. On the basis of these facts, the three-judge court dismissed the complaint.[4]

The court held that Gonzalez lacked "standing" to contest the constitutionality of the statutory scheme. First, the court observed that enjoining future enforcement of the scheme would be a "useless act" so far as Gonzalez was concerned, since the events of which he complained—the repossession and resale of his car—had already taken place.[5] Secondly, the court reasoned that the complaint, because it alleged that Gonzalez had not been in default, was directed, not at the constitutional validity of the statutory scheme, but only at Mercantile's abuse of the scheme. Noting that the statutory provisions authorized repossession and title transfer only upon default, and provided for injunctive relief and damages where creditors acted in the absence of default, the court held that Gonzalez lacked standing to litigate "the validity of these statutes when *properly* applied to debtors *actually in default*."[6] The complaint was dismissed "[s]ince . . . all plaintiffs in this case fail to present a claim which can be reached on the merits."[7]

## II

Appealing here individually and as a purported class representative, Gonzalez seeks reversal of the District

---

[4] Since only Gonzalez has sought review of the three-judge court's dismissal of the complaint, we confine our summary of that court's analysis to the specific facts of his case. The District Court's analysis was similar, however, with regard to each of the named plaintiffs.

[5] *Mojica* v. *Automatic Employees Credit Union, supra,* at 145–146.

[6] *Id.,* at 145.

[7] *Id.,* at 146.

Court's "standing" determination, and an order directing the reinstatement of his complaint. Our appellate jurisdiction is controlled by 28 U. S. C. § 1253:

> "Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges."

Gonzalez' jurisdictional argument is very simple: The dismissal of his complaint did in fact "deny" him the permanent injunctive relief he requested, and the case was one "required . . . to be heard and determined" by three judges because the several conditions precedent to convening a three-judge court under 28 U. S. C. §§ 2281 and 2284 were met. That is, the constitutional question raised was substantial; [8] the action sought to enjoin a state official from executing statutes of statewide application; [9] and the complaint at least formally alleged a basis for equitable relief.[10]

Mercantile denies that all of these conditions were met, but places greater emphasis on an entirely different reading of § 1253. Mercantile argues that an injunction is not "denied" *for purposes of § 1253* unless the denial is based upon an adverse determination on the merits of the plaintiff's constitutional attack on the state statutes. In the present case, injunctive relief was denied, not because the court found the challenged statutes constitutionally sound, but only because the court found that Gonzalez lacked standing to make the challenge. Mercantile argues that a dismissal premised on grounds short of the constitutional merits should be reviewed in

---

[8] See *Goosby* v. *Osser,* 409 U. S. 512.

[9] See *Moody* v. *Flowers,* 387 U. S. 97.

[10] See *Idlewild Bon Voyage Liquor Corp.* v. *Epstein,* 370 U. S. 713.

the first instance by the Court of Appeals, rather than by direct appeal to this Court.

It is an understatement to say that this argument is not wholly supported by precedent, for the fact is that the Court has on several occasions entertained direct appeals from three-judge-court orders denying injunctions on grounds short of the merits.[11]  But it is also a fact that in the area of statutory three-judge-court law the doctrine of *stare decisis* has historically been accorded considerably less than its usual weight.  These procedural statutes are very awkwardly drafted,[12] and in struggling to make workable sense of them, the Court has not infrequently been induced to retrace its steps.[13]  Writing

---

[11] Cases in which the District Court had denied injunctive relief for want of standing, or of justiciability generally: *Florida Lime & Avocado Growers* v. *Jacobsen,* 362 U. S. 73; *Baker* v. *Carr,* 369 U. S. 186; *Flast* v. *Cohen,* 392 U. S. 83; *Richardson* v. *Kennedy,* 401 U. S. 901; *Granite Falls State Bank* v. *Schneider,* 402 U. S. 1006. Cases where denial was for want of subject-matter jurisdiction: *Lynch* v. *Household Finance Corp.,* 405 U. S. 538; *Carter* v. *Stanton,* 405 U. S. 669.  Cases where denial was on grounds of abstention or for want of equitable jurisdiction: *Doud* v. *Hodge,* 350 U. S. 485; *Zwickler* v. *Koota,* 389 U. S. 241; *Mitchum* v. *Foster,* 407 U. S. 225; *American Trial Lawyers Assn.* v. *New Jersey Supreme Court,* 409 U. S. 467.

[12] Perhaps the oddest feature of § 1253 is that it conditions this Court's appellate jurisdiction on whether the three-judge court was correctly convened.  But the Court has abjured this literalistic reading of the statute and has not hesitated to exercise jurisdiction "to determine the authority of the court below and 'to make such corrective order as may be appropriate to the enforcement of the limitations which that section imposes.'" *Bailey* v. *Patterson,* 369 U. S. 31, 34, quoting *Gully* v. *Interstate Natural Gas Co.,* 292 U. S. 16, 18.

[13] For example: compare *Idlewild Bon Voyage Liquor Corp.* v. *Epstein, supra,* with *Stratton* v. *St. Louis S. W. R. Co.,* 282 U. S. 10 (whether review of a single judge's refusal to convene a three-judge court is available in the court of appeals); compare *Kennedy* v. *Mendoza-Martinez,* 372 U. S. 144, with *FHA* v. *The Darlington,*

for the Court on one of these occasions, Mr. Justice Harlan noted:

> "Unless inexorably commanded by statute, a procedural principle of this importance should not be kept on the books in the name of *stare decisis* once it is proved to be unworkable in practice; the mischievous consequences to litigants and courts alike from the perpetuation of an unworkable rule are too great." *Swift & Co.* v. *Wickham,* 382 U. S. 111, 116.

The reading given to § 1253 by appellant Gonzalez is not "inexorably commanded by statute." For the statute "authorizes direct review by this Court . . . as a means of accelerating a final determination on the merits." *Swift & Co.* v. *Wickham, supra,* at 119. It is true that dismissal of a complaint on grounds short of the merits does "deny" the injunction in a literal sense, but a literalistic approach is fully persuasive only if followed without deviation. In fact, this Court's interpretation of the three-judge-court statutes has frequently deviated from the path of literalism.[14] If the opaque

---

*Inc.,* 358 U. S. 84, 87 (whether three judges are required where only declaratory relief is requested); compare *Swift & Co.* v. *Wickham,* 382 U. S. 111, with *Kesler* v. *Dept. of Public Safety,* 369 U. S. 153 (whether a three-judge court is required when a complaint seeks to enjoin a state statute on the ground that it violates the Supremacy Clause).

[14] Read literally, § 1253 would give this Court appellate jurisdiction over even a *single judge's* order granting or denying an injunction if the "action, suit, or proceeding" were in fact one "required . . . to be heard and determined" by three judges. But we have glossed the provision so as to restrict our jurisdiction to orders actually entered by three-judge courts. See *Ex parte Metropolitan Water Co.,* 220 U. S. 539, 545.

A single judge is literally forbidden to "dismiss the action, or enter a summary or final judgment" in any case required to be heard by three judges. 28 U. S. C. § 2284 (5). Read literally, this provision might be held to prohibit a single judge from dismissing

terms and prolix syntax of these statutes were given their full play, three-judge courts would be convened, and mandatory appeals would lie here, in many circumstances where such extraordinary procedures would serve no discernible purpose.

Congress established the three-judge-court apparatus for one reason: to save state and federal statutes from improvident doom, on constitutional grounds, at the hands of a single federal district judge.[15] But some of

a case unless he has determined that it fails to meet the requirements of § 2281 or § 2282. See Berueffy, The Three Judge Federal Court, 15 Rocky Mt. L. Rev. 64, 73–74 (1942), and Note, 28 Minn. L. Rev. 131, 132 (1944). But we have always recognized a single judge's power to dismiss a complaint for want of general subject-matter jurisdiction, without inquiry into the additional requisites specified in §§ 2281 and 2282. *Ex parte Poresky,* 290 U. S. 30, 31; *Bailey* v. *Patterson,* 369 U. S., at 33; *Idlewild Bon Voyage Liquor Corp.,* 370 U. S., at 715; *Goosby* v. *Osser, supra.*

While the literal terms of the three-judge-court statutes give us appellate jurisdiction over any three-judge-court order granting or denying an "interlocutory or permanent injunction," we have in fact disclaimed jurisdiction over interlocutory orders denying permanent injunctions, *Goldstein* v. *Cox,* 396 U. S. 471, and *Rockefeller* v. *Catholic Medical Center,* 397 U. S. 820.

While § 2281 requires a three-judge court where the injunction will operate against any state "statute," we have construed the term narrowly, to include only enactments of statewide application, *Moody* v. *Flowers,* 387 U. S., at 101. Cf. *King Mfg. Co.* v. *City Council of Augusta,* 277 U. S. 100, 103–104, construing far more broadly the term "statute" as used in the predecessor to 28 U. S. C. § 1257 (2).

While § 2281 calls for three judges to enjoin a statute "upon the ground" of its "unconstitutionality," we have held that three judges are not in fact necessary where the unconstitutionality of the statute is obvious and patent, *Bailey* v. *Patterson, supra,* or where the constitutional challenge is grounded on the Supremacy Clause, *Swift & Co.* v. *Wickham, supra.* See also n. 12, *supra.*

[15] *Phillips* v. *United States,* 312 U. S. 246, 250–251; *Bailey* v. *Patterson, supra,* at 33. The Court sketched the legislative history of the three-judge-court statutes in *Swift & Co.* v. *Wickham,* 382 U. S., at 116–119. See also Currie, The Three-Judge District

the literal words of the statutory apparatus bear little or no relation to that underlying policy, and in construing these we have stressed that the three-judge-court procedure is not "a measure of broad social policy to be construed with great liberality." *Phillips* v. *United States,* 312 U. S. 246, 251. See also *Kesler* v. *Dept. of Public Safety,* 369 U. S. 153, 156–157; *Swift & Co.* v. *Wickham,* 382 U. S., at 124; *Allen* v. *State Board of Elections,* 393 U. S. 544, 561–562.

The words of § 1253 governing this Court's appellate jurisdiction over orders denying injunctions fall within this canon of narrow construction. Whether this jurisdiction be read broadly or narrowly, there will be no impact on the underlying congressional policy of ensuring this Court's swift review of three-judge-court orders that *grant* injunctions. Furthermore, only a narrow construction is consonant with the overriding policy, historically encouraged by Congress, of minimizing the mandatory docket of this Court in the interests of sound judicial administration.[16]

---

Court in Constitutional Litigation, 32 U. Chi. L. Rev. 1, 3–12 (1964); Note, The Three-Judge District Court: Scope and Procedure Under Section 2281, 77 Harv. L. Rev. 299, 299–301 (1963).

[16] "[I]nasmuch as this procedure also brings direct review of a district court to this Court, any loose construction of the requirements . . . would defeat the purposes of Congress, as expressed by the Jurisdictional Act of February 13, 1925, to keep within narrow confines our appellate docket." *Phillips* v. *United States,* 312 U. S., at 250. See also *Goldstein* v. *Cox,* 396 U. S., at 478; *Gunn* v. *University Committee,* 399 U. S. 383, 387–388; *Allen* v. *State Board of Elections,* 393 U. S., at 562; *Board of Regents* v. *New Left Education Project,* 404 U. S. 541, 543.

"The history of latter-day judiciary acts is largely the story of restricting the right of appeal to the Supreme Court." F. Frankfurter & J. Landis, The Business of the Supreme Court 119 (1927). To this trend of reform, the Court's mandatory appellate jurisdiction under the three-judge-court statutes represents a major, and increasingly controversial, exception. The number of cases heard by three-

Mercantile argues that § 1253 should be read to limit our direct review of three-judge-court orders denying injunctions to those that rest upon resolution of the constitutional merits of the case. There would be evident virtues to this rule. It would lend symmetry to the Court's jurisdiction since, in reviewing orders granting injunctions, the Court is necessarily dealing with a resolution of the merits. While issues short of the merits—such as justiciability, subject-matter jurisdiction, equitable jurisdiction, and abstention—are often of more than trivial consequence, that alone does not argue for our reviewing them on direct appeal. Discretionary review in any case would remain available, informed by the mediating wisdom of a court of appeals. Furthermore, the courts of appeals might in many instances give more detailed consideration to these issues than this Court, which disposes of most mandatory appeals in summary fashion.[17]

But the facts of this case do not require us to explore the full sweep of Mercantile's argument. Here the three-

judge courts has dramatically increased in the past decade. See Ammerman, Three-Judge Courts: See How They Run!, 52 F. R. D. 293, 304–306; Annual Report of the Director of the Administrative Office of the United States Courts, 1974, p. IX–44. In the 1972 Term, 43 of the Court's opinions—nearly a quarter of the total—were in three-judge-court cases. Symposium, The Freund Report: A Statistical Analysis and Critique, 27 Rutgers L. Rev. 878, 902 (1974). This marks a dilution of that control over our docket which Mr. Chief Justice Taft identified as the prime object of the 1925 Act. Taft, The Jurisdiction of the Supreme Court Under the Act of February 13, 1925, 35 Yale L. J. 1 (1925).

[17] This Court typically disposes summarily of between two-thirds and three-fourths of the three-judge-court appeals filed each term. Douglas, The Supreme Court and Its Case Load, 45 Cornell L. Q. 401, 410 (1960). See Symposium, 27 Rutgers L. Rev., *supra*, n. 9, at 902–903. It seems more than probable that many of these cases, while unworthy of plenary consideration here, would benefit from the normal appellate review available to single-judge cases in the courts of appeals.

100

judge court dismissed the complaint for lack of "standing." This ground for decision, that the complaint was nonjusticiable, was not merely short of the ultimate merits; it was also, like an absence of statutory subject-matter jurisdiction, a ground upon which a single judge could have declined to convene a three-judge court, or upon which the three-judge court could have dissolved itself, leaving final disposition of the complaint to a single judge.[18]

A three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts. See *Ex parte Poresky*, 290 U. S. 30, 31. It is now well settled that refusal to request the convention of a three-judge court, dissolution of a three-judge court, and dismissal of a complaint by a single judge are orders reviewable in the court of appeals, not here.[19] If the three-judge court in the present case had dissolved itself on grounds that "standing" was absent, and had left subsequent dismissal of the complaint to a single judge, this Court would

---

[18] See *Rosado* v. *Wyman*, 304 F. Supp. 1354, appeal dismissed, 395 U. S. 826; *Mengelkoch* v. *Industrial Welfare Comm'n*, 284 F. Supp. 950, vacated to permit appeal to Court of Appeals, 393 U. S. 83; *Crossen* v. *Breckenridge*, 446 F. 2d 833, 837; *American Commuters Assn.* v. *Levitt*, 279 F. Supp. 40, aff'd, 405 F. 2d 1148; *Hart* v. *Kennedy*, 314 F. Supp. 823, 824.

[19] Where a single judge refuses to request the convention of a three-judge court, but retains jurisdiction, review of his refusal may be had in the court of appeals, see *Idlewild Bon Voyage Liquor Corp.* v. *Epstein, supra,* and *Schackman* v. *Arnebergh*, 387 U. S. 427, either through petition for writ of mandamus or through a certified interlocutory appeal under 28 U. S. C. § 1292 (b). These also are the routes of review of a three-judge court's decision to dissolve itself, *Mengelkoch* v. *Industrial Welfare Comm'n*, 393 U. S. 83, and *Wilson* v. *Port Lavaca*, 391 U. S. 352. Where a single judge has disposed of the complaint through a final order, appeal lies to the court of appeals under 28 U. S. C. § 1291.

thus clearly have lacked appellate jurisdiction over both orders. The same would have been true if the dissolution and dismissal decisions had been made simultaneously, with the single judge merely adopting the action of the three-judge court.[20] The locus of appellate review should not turn on such technical distinctions.

Where the three-judge court perceives a ground justifying both dissolution and dismissal, the chronology of decisionmaking is typically a matter of mere convenience or happenstance. Our mandatory docket must rest on a firmer foundation than this. We hold, therefore, that when a three-judge court denies a plaintiff injunctive relief on grounds which, if sound, would have justified dissolution of the court as to that plaintiff, or a refusal to request the convention of a three-judge court *ab initio*, review of the denial is available only in the court of appeals.

In the present case, accordingly, the correctness of the District Court's view of Gonzalez' standing to sue is for the Court of Appeals to determine. We intimate no views on the issue, for we are without jurisdiction to consider it.[21] We simply vacate the order before us and remand the case to the District Court so that a fresh order may be entered and a timely appeal prosecuted to the Court of Appeals.[22]

*It is so ordered.*

---

[20] *Wilson* v. *Port Lavaca, supra.*

[21] It appears that Gonzalez and Mercantile settled the former's damage claim while this appeal was pending. The Court of Appeals will, of course, be free to consider this new development in appraising the correctness of the dismissal of the complaint. See *SEC* v. *Medical Committee for Human Rights,* 404 U. S. 403.

[22] 28 U. S. C. § 1291. See *Mengelkoch* v. *Industrial Welfare Comm'n,* 393 U. S., at 84.