**M. C. HARDY**

v.

**BOARD OF SUPERVISORS OF DINWIDDIE COUNTY, VIRGINIA, and Electoral Board of Dinwiddie Co., Virginia.**

**Civ. A. No. 74–0443–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Jan. 2, 1975.

Robert P. Geary, Richmond, Va., for plaintiff.

Samuel W. Hixon, III, Fred T. Gray, Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

Plaintiff asserts the Court's jurisdiction over this complaint seeking declaratory injunctive relief under 28 U.S.C. § 2201 and 42 U.S.C. § 1983 coupled with 28 U.S.C. § 1343(3)(4). Plaintiff is an adult citizen of the United States residing in Dinwiddie County, Virginia. The defendant Board of Supervisors is the local governing body of Dinwiddie County and the defendant Dinwiddie County Board of Elections is the local board authorized by statute to conduct elections in Dinwiddie County.

In March of 1973 the Board of Supervisors, acting under authority contained in Va.Code Ann. §§ 15.1–37.4–15.1–37.7, 15.1–571, 15.1–571.1 (Repl.1973)[1] enacted an ordinance reapportioning the County of Dinwiddie into four electoral districts from which members of the

---

1. § 15.1–37.4 *Election of governing bodies of counties, cities and towns.*—The governing body of every county, city, and town shall be elected by the qualified voters of such county, city, and town. If the members, or any of the members, of the governing body of a county, city, or town are elected by districts or wards, each such district or ward shall be composed of contiguous and compact territory and shall be so constituted as to give, as nearly as is practicable, representation in proportion to the population of the district or ward. The governing body of any county shall be composed of not less than three nor more than eleven members. Nothing in this section shall preclude the apportionment of more than one member of the governing body of any county, city, or town to a single district or ward. (1971, Ex.Sess., c. 199.)
§ 15.1–37.5 *Reapportionment of boundaries of districts or wards.*—In a county, city, or town electing members of its governing body from districts or wards, the governing body may reapportion the representation in the governing body by altering the boundaries of districts or wards, including, if the governing body deems it appropriate, increasing or diminishing the number of such districts or wards, provided that such representation is based, as nearly as is practicable, on population.
In a county, city, or town electing members of its governing body from districts or wards, the governing body in nineteen hundred seventy-one and every ten years thereafter shall reapportion the representation in the governing body by altering the boundaries of the districts or wards, including, if the governing body deems it appropriate, increasing or diminishing the number of such districts or wards, in order to give, as nearly as is practicable, representation on the basis of population. For the purposes of reapportioning representation in nineteen hundred seventy-one and every ten years thereafter, the governing body of a county, city or town shall use population figures of the most recent decennial United States census for such county, city, or town. Such reapportionment shall be commenced by July one, nineteen hundred seventy-one and shall be effective December thirty-one, nineteen hundred seventy-one. (1971, Ex.Sess., c. 199.)
§ 15.1–37.6 *Governing body authorized to expend funds for reapportionment.*—Effective in nineteen hundred seventy-one, the governing body of a county, city, or town may, and

1254

Board of Supervisors would stand for election.

The ordinances adopted set up four electoral districts with the populations of electoral districts one, three and four substantially equal. The population of electoral district two was slightly over twice as large as the population of each of the other districts. To compensate for the disparity electoral district two was awarded two members of the Board of Supervisors while one member each was to be elected from the other three districts. The number of registered voters in each of the four districts is approximately the same.

The parties agree that approximately one-half of the population of election district two consists of patients at Central State Hospital and Petersburg Training School. These institutions are State operated and are intended for the care, treatment and cure of persons with mental and emotional difficulties. In an earlier day these institutions would have been known as an insane asylum and a school for the feeble-minded.

It is clearly manifest, then, that electoral district two has two members of the board of supervisors, with whatever advantages that gives its populace, solely because that electoral district has within its boundaries the unassimilated population of the Hospital and of the Training School. The records of the Electoral Board indicate that only one person included within the inmate population has registered to vote and that no person has voted who is an inmate.

In their joint answer and in their answers to interrogatories the defendants, in effect, admit all the above but maintain that they are required to take into account, without distinction, the population of Central State Hospital and Petersburg Training School. This is so, they say, because of the mandate of the Virginia statutes cited above, particularly where the statutes say that in effecting a redistricting the Board shall "give, as nearly as practicable, representation on the basis of population," and in so doing the Board "shall use population figures of the most recent decennial United States census." Va.Code Ann. §

it is hereby authorized to, expend such funds, and employ such persons and/or agencies, as it may deem necessary to carry out the responsibilities relating to reapportionment provided by this chapter. (1971, Ex.Sess., c. 199.)

§ 15.1-37.7 *Recording resolution of reapportionment.*—A copy of the ordinance or resolution reapportioning representation in the governing body of a county, city or town, including a description of the boundaries and a map showing the boundaries of the districts or wards, shall be recorded in the official minutes of such governing body, and a certified copy of the ordinance or resolution, including a description of the boundaries and a map showing the boundaries of the districts or wards, shall be sent to the Division of State Planning and Community Affairs. (1971, Ex.Sess., c. 199.)

§ 15.1-571 Magisterial districts established. —The several magisterial districts in different counties of this State, with the boundary lines and names thereof respectively as constituted and known on the day before this Code section takes effect, are declared to be the magisterial districts in such counties respectively and shall so continue unless and until the same shall be changed as provided in this title. (Code 1950, § 15-55; 1962, c. 623; 1971, Ex.Sess., c. 200.)

§ 15.1-571.1. *Boundaries of magisterial districts.*—The several magisterial districts in the different counties of the State, with the boundary lines and names thereof respectively shall be as the governing body of such counties may establish. The districts shall be composed of contiguous and compact territory and be so constituted as to give, as nearly as is practicable, representation in proportion to the population of the district. Whenever in the opinion of the governing body it is necessary, or whenever the boundaries of such county have been altered, the governing body shall, as may be necessary, redistrict the county in magisterial districts, change the boundaries of existing districts, change the name of any district, or increase or diminish the number of districts.

The governing body of a county may by ordinance provide that the magisterial districts of the county shall remain the same, but that representation on the governing body shall be by election districts, in which event all sections of this Code providing for election or appointment on the basis of magisterial districts shall be construed to provide for election or appointment on the basis of election districts; such election districts shall also constitute school districts as prescribed by § 22-61 of this Code. (1971, Ex. Sess., c. 200.)

15.1–37.5 (Repl.1973). Thus, defendants say, the ordinance adopted by the Board and attacked by the plaintiff is merely the child of the State statute. The defendants say, then, that it is a State statute which plaintiff, in fact, seeks to declare unconstitutional and that plaintiff's action should be dismissed under Fed.R.Civ.Proc. 12(b)(1) for plaintiff's failure to apply for a three-judge court pursuant to 28 U.S.C. § 2281.

Plaintiff has not favored the Court with a brief in opposition to defendants' motion to dismiss. Accordingly, the Court must consider defendants' motion and brief on its merits without the benefit of the scrutiny and criticism afforded by the adversary system.[1(a)]

■ 28 U.S.C. § 2281[2] is not "a measure of broad social policy to be construed with great liberality, but . . . an enactment technical in the strict sense of the term and to be applied as such." Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941); *cf.* Gonzales v. Automatic Employees Credit Union, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974). The enactment requires the convening of a three-judge court only when the conditions set forth in the Act are met. Examined in the light of the requirements of the three-judge statute, plaintiff's complaint falls short of requiring the convening of a three-judge court.

■ It will first be noted that the convening of a three-judge court is not required unless the constitutionality of a State statute is called into question. In the instant case it is a local ordinance cited by plaintiff to be unconstitutional. It is true that the local ordinance was adopted pursuant to, by authority of, and in compliance with a State statute. It is also true that the State statute has "general and statewide application" in the language of Moody v. Flowers, 387 U.S. 97, 101, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967). But the application given the general State statute by the Dinwiddie Board of Supervisors is, in a practical sense, peculiar to Dinwiddie County. The Court accepts the fact that there are no more than a half-dozen other localities in Virginia containing public mental hospitals. Only these localities could be concerned by a decision in this case with the remaining 126 Virginia localities being affected by it only inferentially, if at all.

The Court takes the position then, that even if it be considered that it is the State statute, not the ordinance, the application of which plaintiff seeks to have enjoined, the aspect of the statute attacked has no general and statewide application.

A second requirement of the three-judge court statute is that the defendant shall be an officer of the State. The Board of Supervisors of Dinwiddie County and the Electoral Board of Dinwiddie County are, without doubt, local officials and not officers of the State. Defendants cite Sailors v. Board of Education of the County of Kent, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967) for the proposition that even though the named defendants are, strictly speaking, local officials, a three-judge court is required if the local officials are functioning pursuant to a statewide policy and performing a State function.

It is undeniable that in the instant case the defendants are functioning pursuant to a statewide policy—insuring the implementation of "one man—one vote" for local governing bodies—but it

---

1(a). A brief—over a month late—was received from plaintiff after this memorandum was dictated.

2. 28 U.S.C. § 2281. An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

is doubtful that it can be claimed they are performing a State function. The re-apportionment of a county by the County Board of Supervisors is a function specifically delegated to the local governing body by the Commonwealth. See Va.Code Ann. § 15.1–37.5 (Repl. 1973). Further, even if it be assumed that in re-apportioning the county the Board of Supervisors and the County Board of Elections are performing a State function, in the particular case before the Court they are performing a State function which is, substantially speaking, peculiar to Dinwiddie County. The statute has, and is intended to have, statewide applicability, but whether or not § 15.1–37.5 requires the counting of inmates at Central State Hospital and Petersburg Training School as part of the population of Dinwiddie County is pertinent only to Dinwiddie County and of interest to only six other of Virginia's 133 localities.

On the basis of the foregoing, the Court concludes that the technical requirements of the statute viewed and applied "in the strict sense of the term" do not permit this court to convene a three-judge panel to hear and decide the case.

An appropriate order shall issue.