Fred WERTHEIMER,
et al., Appellants,

v.

FEDERAL ELECTION COMMISSION,
Appellee.

No. 00–5371.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 14, 2001.

Decided Oct. 26, 2001.

Paul A. Engelmayer argued the cause for appellants. With him on the briefs were Roger M. Witten, Daniel H. Squire, and Joshua D. Weinberg.

Richard B. Bader, Associate General Counsel, Federal Election Commission, argued the cause for appellee. With him on the brief was Vivien Clair, Attorney. Lawrence M. Noble, General Counsel, entered an appearance.

Before: GARLAND, Circuit Judge; SILBERMAN and WILLIAMS,* Senior Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge SILBERMAN.

Opinion concurring in the judgment filed by Circuit Judge GARLAND.

SILBERMAN, Senior Circuit Judge:

Fred Wertheimer, Scott Harshbarger, and Archibald Cox appeal from the district

* Senior Judge Williams was in regular active service at the time of oral argument.

court's dismissal of their suit for lack of subject matter jurisdiction. They sued under section 9011(b) of the Presidential Election Campaign Fund Act[1] seeking construction of the terms "contribution" and "expenditure" within the meaning of that Act. We affirm on grounds that appellants lack standing.

## I.

Fred Wertheimer is the current president of Democracy 21 and a former president of Common Cause, two organizations whose purpose is the modification of campaign financing. Scott Harshbarger is the current president of Common Cause. Archibald Cox is chairman emeritus of Common Cause. They voted in the 1996 presidential election and, at the time this suit was filed, intended to vote in the 2000 presidential election. Their allegations are that, notwithstanding the Fund Act's prohibition on presidential candidates accepting contributions from private sources, during the 1996 and 2000 presidential campaigns the two major political parties were funding campaign advertisements furthering the election of their respective presidential nominees in close coordination with those candidates. Essentially their suit seeks a declaration that expenditures by political parties that further the election of their respective presidential candidates, and that are coordinated with those presidential candidates, constitute contributions to and expenditures by such presidential candidates within the meaning of the Fund Act, and as a corollary, major party candidates who have chosen public funds may not coordinate with their respective political parties on party expenditures that further that candidate's election.

In order to understand appellants' claim—and their alleged standing—one has to carefully consider the interrelationship between the Fund Act and the Federal Election Campaign Act of 1971, as amended (FECA).[2] The Fund Act also passed in 1971 established a voluntary program of public financing of the general election campaigns of eligible major and minor party nominees for the office of President of the United States.[3] It established the Presidential Election Campaign Fund, the size of which is determined by a tax checkoff option through which each individual taxpayer may designate on his federal income tax return that three dollars be transferred to the Fund. Appellants allege that at least one of them designated on his federal income tax return that three dollars be transferred to the Fund. To receive a specified amount of public funding for use in their general election campaigns, participating major party presidential nominees must be certified as eligible by the Federal Election Commission (FEC) and must agree not to accept private campaign contributions for the general election campaign, except to the extent that the Fund is insufficient to provide the statutorily specified amount to each candidate. Such a candidate must also agree not to incur "qualified campaign expenses" in excess of his public entitlement. These expenses include those incurred by the candidate of a political party for the office of President to further his election and those by his authorized committee to further his election. An expense shall be considered as incurred by a candidate if it is incurred by an authorized person. Participating candidates must also agree that they and their authorized committees will

---

1. 26 U.S.C. § 9001 *et seq.* (2000).

2. 2 U.S.C. §§ 431–455 (2000).

3. Congress also enacted the Presidential Primary Matching Payment Account Act, 26 U.S.C. §§ 9031–9042, which establishes a voluntary system of public financing for major and minor party primary elections.

submit their campaign accounts for a post-election Commission audit of qualified campaign expenses and pay any amounts required to be repaid pursuant to statute. The Act does not, however, require candidates to publicly disclose their campaign finances.

We are authorized to review Commission action under the Fund Act. It also authorizes individuals eligible to vote for President to institute "such actions, including actions for declaratory judgment or injunctive relief, as may be *appropriate* to implement or contrue [sic] any provision of this chapter." (Emphasis added). A three-judge panel hears lawsuits brought under section 9011(b), with direct appeal to the Supreme Court. But an individual district court judge may consider threshold jurisdictional challenges prior to convening a three-judge panel. *See Gonzalez v. Automatic Emp. Credit Union,* 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974); *Reuss v. Balles,* 584 F.2d 461, 464 n. 8 (D.C.Cir.), *cert. denied,* 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978).

Publicly and privately financed candidates for federal office are also subject to FECA, which imposes limits upon the amounts that individuals, corporations, political committees, and political parties can contribute to a candidate for federal political office. It limits the amount these individuals or entities can spend in coordination with a candidate, treating these expenditures as "contributions to" a candidate for purposes of FECA. The Commission refers to these expenditures as "coordinated expenditures" or "441a expenditures." *See* 2 U.S.C. § 441a(a)(7)(B)(i); § 441a(d)(2); *Colorado Republican Campaign Comm. v. FEC,* 518 U.S. 604, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996). "Contributions" and "expenditures" are defined as covering only those contributions and expenditures that are made "for the purpose of influencing any election for Federal office." 2 U.S.C. § 431(8)(A)(i), (9)(A)(i). As of May 2001, for entities other than candidates, authorized committees, and political party committees, any "expenditure for general public political communication that includes a clearly identified candidate and is coordinated with that candidate, an opposing candidate or a party committee supporting or opposing that candidate is both an expenditure under 11 C.F.R. 100.8(a) and an in-kind contribution under 11 C.F.R. 100.7(a)(1)(iii)." 11 C.F.R. 100.23 (2001). Prior to promulgating this broader definition, the Commission deadlocked 3–3 on whether to pursue its counsel's finding that the 1996 Clinton campaign made illegal coordinated expenditures and accepted illegal contributions from the Democratic National Committee (DNC). The Commission has six voting members, no more than three of whom may be affiliated with the same political party, and any formal agency action requires the affirmative vote of four members. The Commissioners disagreed over whether the political party's expenditures were, in fact, "coordinated expenditures," which seems to have been the impetus for this lawsuit. On the heels of the Supreme Court's decision in *FEC v. Colorado Republican Campaign Committee,* 533 U.S. 431, 121 S.Ct. 2351, 150 L.Ed.2d 461 (2001), the Commission is engaged in rulemaking to extend this May 2001 regulation of coordinated expenditures to political parties.

All federal candidates and political committees must file periodic reports with the Commission detailing all their receipts as well as their contributions, expenditures, and other disbursements. Section 434(b)(2) requires that these reports disclose contributions from political party committees and, for an authorized committee of a candidate for the office of President, certain federal funds. The Commis-

sion's implementing regulations require national political party committees to report for public disclosure their "soft money" disbursements and donations received. FECA further requires political parties to report "the total amount of all disbursements" and to delineate 441a coordinated expenditures. A candidate is not, however, required to report as contributions coordinated expenditures by his political party.

The Commission has exclusive jurisdiction with respect to the civil enforcement of FECA. However, a private party may file a sworn administrative complaint alleging violations with the Commission. After investigation, the Commission determines whether there is "probable cause to believe" that a violation has occurred. If the Commission dismisses an administrative complaint, petitioners may seek review of the Commission's determination in the United States District Court for the District of Columbia. Democracy 21 and Common Cause have filed an administrative complaint with the Commission making essentially the same allegations of illegal coordination, contributions, and expenditures as appellants make in this suit.

In this case, appellants alleged that the Commission's failure, as yet, to implement and construe the Act to identify coordinated expenditures by the major political parties to further the election of their publicly financed nominees as impermissible "contributions" and "expenditures" injured them in three distinct ways. First, the FEC's failure deprived them of required information about the source and amount of candidates' financing. Second, the FEC's failure prevented them from determining whether publicly financed candidates were abiding by the law in forgoing private contributions and in refusing to

make expenditures in excess of the public grant. Third, the FEC's inaction interfered with their right to direct that their $3 income tax return checkoff be used in a lawful fashion.

The district court dismissed appellants' suit prior to convening a three-judge panel. It held that appellants' second and third alleged injuries were insufficient to confer Article III standing and appellants do not rely on those alleged injuries on appeal. The court concluded that it lacked subject matter jurisdiction under section 9011(b) to consider appellants' claim that the Commission's failure to implement and construe the Fund Act deprived them of information about the source and amount of the presidential candidates' financing because section 9011(b) "only empowers federal district courts 'to implement or con[s]true'" the Fund Act. And "to consider Plaintiffs' inadequate disclosure claim, the Court would have to implement and construe FECA, not the Fund Act, because FECA is the law that governs the disclosure requirements about which Plaintiffs complain."

## II.

■ The Commission supports the district court's determination that it lacked subject matter jurisdiction because appellants' claim is not really for an interpretation of the Fund Act, but rather for an interpretation of similar but not identical language in FECA, which includes the disclosure requirements.[4] Appellants argue that it is likely that the two statutes would be interpreted *in pari materia*, which is by no means obvious, but, in any event, the court's reasoning seems to us to sound more applicable to cause of action considerations than to subject matter jurisdiction. The district judge, however, lacked

---

**4.** Compare the use of the term "qualified campaign expense" in the Fund Act, 26

U.S.C. § 9002(11), with the use of the term "expenditure" in FECA, 2 U.S.C. § 431(9)(A).

authority, by herself, to dismiss on cause of action grounds.

Be that as it may, we think appellants lack standing—which is, of course, jurisdictional. The Commission disputes all three elements of appellants' standing claim: injury, causation and redressability. Causation and redressability are challenged on similar reasoning that led the district court to dismiss. The Commission argues that an interpretation of the Fund Act will not necessarily or even likely lead to the interpretation of similar language in FECA so that redressability is missing. And to reverse the analysis (which normally follows) causation is defective because the Commission's alleged failure to interpret language in the Fund Act did not cause the Commission to make any determination with respect to FECA. In other words, whether considering this problem from the vantage point of causation or redressability the interpretation of the Fund Act and FECA are independent variables.

As if this were not enough the Commission also asserts that appellants fail the prudential standing test as well because this is not an "appropriate" action within the meaning of section 9011(b). If we were to grant appellants relief in construing the Fund Act, on the theory that the Commission would be obliged or likely to construe FECA *in pari materia*, we would be interfering implicitly with the Commission's exclusive authority to enforce FECA.

■ Although recognizing the tenuous nature of appellants' claimed interrelationship between the two statutes we prefer to rest our decision on appellants' failure to assert an injury in fact because that is the logical anterior question in any standing analysis. Appellants rely on *FEC v. Akins*, 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998), which holds that a voter suffers cognizable injury under

FECA when it is deprived of information that the Act requires be disclosed. *See also Akins v. FEC*, 101 F.3d 731, 735 (D.C.Cir.1997) (en banc) (comparing cases), *vacated and remanded on other grounds*, 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) ("We have recognized in our 'informational injury' cases that a party may be entitled to sue in federal court to force the government to provide information to the public (and thereby to it) if the government's failure to provide or cause others to provide that particular information specially affects that party."). On the other hand, as the Commission points out, the government's alleged failure to "disclose" that certain conduct is illegal by itself does not give rise to a constitutionally cognizable injury. *See Common Cause v. FEC*, 108 F.3d 413, 417 (D.C.Cir.1997). "To hold that a plaintiff can establish injury in fact merely by alleging that he has been deprived of the knowledge as to whether a violation of the law has occurred would be tantamount to recognizing a justiciable interest in the enforcement of the law. This we cannot do." *Id.* at 418. *Cf. Akins*, 524 U.S. at 24, 118 S.Ct. 1777.

The Commission contends, and we agree, that, under the *Akins* test, appellants have failed to show either that they are directly being deprived of any information or that the legal ruling they seek might lead to additional factual information. To be sure, presidential candidates are subject to FECA's disclosure and reporting requirements. And FECA requires political parties to report each disbursement and to label coordinated expenditures as a discrete category. Yet, appellants' counsel did not dispute that all political parties currently report all disbursements or that each transaction appellants allege is illegal is reported in some form. During oral argument, counsel for appellants was asked what

facts, specifically, were not being disclosed. Counsel responded that the "fact" of "coordination" was being withheld. But "coordination" appears to us to be a legal conclusion that carries certain law enforcement consequences.

It is perhaps conceivable that certain facts are necessarily implied by the label "coordinated." If they are, appellants did not make clear what were those facts (nor did they make this argument to the district court or in their briefs). As far as we can determine, appellants do not really seek additional facts but only the legal determination that certain transactions constitute coordinated expenditures. If so, candidates would be required to report allegedly coordinated expenditures, which currently only political parties disclose, as disbursements.[5] But that would mean that appellants only seek the same information from a different source. Any such increase in information resulting from the imposition of duplicative reporting requirements seems trivial.

Although both sides' presentation of the current disclosure and reporting requirements was somewhat confusing, appellants bear the burden of showing their standing, and they simply failed to establish that the ruling sought would yield anything more than a legal characterization or duplicative reporting of information that under existing rules is already required to be disclosed.

\*   \*   \*   \*   \*   \*

The judgment of the district court is affirmed.

*So ordered.*

**5.** Appellants' real dispute seems to be with one commissioner who has stated that he believes a political party's ad is not coordinat-

GARLAND, Circuit Judge, concurring in the judgment:

Appellants contend that in the absence of the judicial declaration they seek, they are deprived of information that a political party committee has coordinated its expenditures with its presidential candidate. The FEC responds, and appellants do not dispute, that political party committees are already required to report and to identify such coordinated expenditures as § 441a(d) expenditures in their FECA filings. FEC Br. at 34–35; *see* 2 U.S.C. § 434(b)(4)(H)(iv), (6)(B)(iv); 2 U.S.C. § 441a(d)(2); *Fed. Election Comm'n v. Colorado Republican Fed. Campaign Comm.*, 533 U.S. 431, 121 S.Ct. 2351, 2352, 2371, 150 L.Ed.2d 461 (2001). Because appellants' briefs fail to articulate how a judicial declaration would provide them with additional information, they have failed to satisfy their burden of establishing standing to bring this action. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

ed with the candidate unless it expressly urges a vote for the candidate.