**William TAPIA–TAPIA, Plaintiff,**

v.

**The DIVISION OF APPEALS OF the SUPERIOR COURT OF PUERTO RICO, composed of the President of the Supreme Court of Puerto Rico, Hon. José Trías-Monge, et al., Defendants.**

Civ. No. 74–1307.

United States District Court, D. Puerto Rico.

Oct. 3, 1975.

Santos P. Amadeo, Río Piedras, P. R., for plaintiff.

Miriam Naveira de Rodón, Sol. Gen., Roberto Armstrong, Jr., Asst. Sol. Gen., San Juan, P. R., for defendants.

Before COFFIN, Circuit Judge, TOLEDO, Chief Judge, and TORRUELLA, District Judge.

## OPINION AND ORDER

TOLEDO, Chief Judge.

On July 30, 1971, plaintiff herein was charged with violating Articles 26 and 27 of Law No. 134 of June 28, 1969, known as the Explosives Law of Puerto Rico, and having pleaded not guilty and requested trial by jury, he was convicted on both counts by the jury on October 15, 1971 (Criminal Cases G–71–1781–82). On November 8, 1971, the Superior Court of Puerto Rico, San Juan Part, sentenced plaintiff to an indeterminate sentence of five to eight years in each count, both sentences to run concurrently. On that same date he appealed his conviction and sentence to the Supreme Court of Puerto Rico and requested bail pending appeal, which motion for bail was granted by the sentencing court on November 30, 1971.

Plaintiff's appeal still pending, on August 8, 1974, the Legislature of the Commonwealth of Puerto Rico enacted Law No. 11 which creates the Division of Appeals of the Superior Court of Puerto Rico to hear criminal cases decided by the District and Superior Courts of Puerto Rico, both felonies and misdemeanors. Said Appellate Division will hear cases either by appeal or by a writ of certiorari and its decisions will be final unless reviewed by the Supreme Court of Puerto Rico on a writ of certiorari.

On November 15, 1974, the Division of Appeals notified plaintiff that his appeal record had been filed in that Court the previous day under the number DACR–74–6 and that he had thirty days from the date of filing in which to submit his brief on appeal. Thereupon, on November 26, 1974, plaintiff filed the present complaint asking for declaratory judgment and injunctive relief, alleging that the hearing of his pending appeal by the Division of Appeals of the Superior Court of Puerto Rico would constitute an ex post facto application of Law No. 11 of August 8, 1974, which would violate the provisions of Article I, Section 9, Clause 3, and Section 10 (prohibition of ex post facto laws), Article VI, Clause 2 (supremacy clause) and the Due

Process Clause of the Fifth Amendment of the Constitution of the United States. Based on these allegations, plaintiff asked that a three judge District Court be convened to adjudge and decree that Law No. 11 of August 8, 1974 is unconstitutional, that a mandatory injunction then be issued ordering defendants to take steps and measures to protect plaintiff's rights, as guaranteed by the Due Process Clause and the ex post facto provisions of the Federal Constitution, and that the Court issue an Order to Show Cause against defendants in this action, which order should be directed to the Hon. Jose Trias Monge, Chief Justice of the Supreme Court of Puerto Rico.

On December 5, 1974, the Court issued an Order to Show Cause, directed to the designated members of the Division of Appeals of the Superior Court of Puerto Rico, ordering said defendants to appear on January 20, 1975 to show cause why a three judge court should not be convened and to file any motion they might deem proper and necessary in relation to the present complaint, accompanied by the required memorandum of law in support thereof. In that same order, the Court directed plaintiff to file a memorandum of law in support of the Court's jurisdiction by December 14, 1974 and defendants to file their reply memorandum by January 13, 1975.

Having obtained extensions of time, plaintiff and defendants filed their memoranda on December 23, 1974 and January 17, 1975, respectively. In addition, on January 13, 1975, defendants filed a motion, with memorandum, asking that the case be dismissed without convening a three judge court alleging that the complaint fails to state facts upon which relief can be granted, that it does not state a case or controversy, that the facts alleged do not show a Federal constitutional question and that petitioner has not exhausted available local remedies. On January 20, 1975, the parties presented oral argument with respect to the convening of a three judge court as well as with respect to defendants' motion to dismiss and plaintiff filed his memorandum in opposition thereto.

On · May 19, 1975, the case still being under advisement, plaintiff filed a motion requesting that the Court order the defendants to stay the appellate proceedings in Case No. DACR–74–6 until the present action be decided on its merits. On the authority of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), plaintiff's motion was denied on May 27, 1975 and on June 9, 1975, a three judge court was convened in this case pursuant to Title 28, United States Code, Section 2281. The Court, having on June 13, 1975 issued an order to the effect that the case would be taken under advisement on the record without any further hearings, has made a thorough study of said record and after careful consideration of the arguments advanced by the parties in the context of the facts of the case, is now ready to render its decision.

For the reasons briefly outlined below, the Court is of the opinion that even though plaintiff's ex post facto claim constitutes a substantial constitutional claim for purposes of convening a three judge court, there is no question but that the complaint must be dismissed.

In *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973), the Supreme Court established the following test for "constitutional insubstantiability":—"In the context of the effect of prior decisions upon the substantiability of constitutional claims . . . claims are constitutionally insubstantial only if the prior decisions render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of [Title 28, United States Code, Section 2281]. A claim is insubstantial only if ' "its unsoundness so clearly results from the previous decisions of this Court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." ' *Ex Parte Poresky,* supra [290 U.S. 30] at 32 [54 S.Ct. 3, 78 L.Ed. 152], quoting from *Hannis Distilling Co. v. Baltimore,* supra [216 U.S. 285] at 288 [30 S.Ct. 326, 54 L.Ed. 482]; see also *Levering and Garrigues Co. v. Morin,*

289 U.S. 103, 105–106, 53 S.Ct. 549, 77 L.Ed. 1062 (1933); *McGilvra v. Ross,* 215 U.S. 70, 80, 30 S.Ct. 27, 54 L.Ed. 95 (1909)". Although plaintiff's ex post factor legislation claim is farfetched and of questionable merit, it is not "obviously without merit" within the meaning of *Goosby v. Osser,* supra. Thus, there is a substantial federal question, and since the other jurisdictional prerequisites of Title 28, United States Code, Section 2281, have been satisfied, it was proper to convene a three judge court.

■ We reject any contention that the single district court judge should have decided the question of the applicability of the doctrine of *Younger v. Harris,* supra, before convening the three judge court. In *Literature, Inc. v. Quinn,* 482 F.2d 372, 375 (1st Cir. 1973), the First Circuit held that, where the complaint formally alleges a basis for equitable relief—as the complaint in this case clearly does—and the case is otherwise a proper one for a three judge court, the applicability of *Younger v: Harris,* supra, must be decided by the three judge panel, not by the single judge. Neither *Hagans v. Labine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), *MTM, Inc. v. Baxley,* 420 U.S. 799, 95 S.Ct. 1278, 43 L.Ed.2d 636 (1975), nor *Gonzalez v. Employers Credit Union,* 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1975), require that a different rule be followed now. Those cases, at most, support the proposition that it would be permissible for the single district judge to decide the *Younger v. Harris* question; they do not hold that the single judge must do so. In view of the strong policy reasons supporting the First Circuit rule, see *Literature, Inc. v. Quinn,* supra, at 375–76, we have no doubt but that it should continue to be followed.

■ We hold that the principles of *Younger v. Harris,* supra, bar this Court from granting plaintiff's request for an in-

junction against the pending state criminal appellate proceeding. In *Younger,* the Supreme Court held that Federal courts will not enjoin pending state criminal prosecutions *except under extraordinary circumstances where the danger of irreparable loss is both great and immediate.* The actual words of the Court were very explicit and emphatic, and we quote from 401 U.S. pages 43 to 44, 91 S.Ct. page 750—"Since the beginning of this Country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts . . . The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief . . . This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity', that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."

The Court then stated at page 45, 91 S.Ct. at page 751 that for these reasons "it has been perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions"[1]

---

1. See also in this respect *Fenner v. Boykin,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926); *Spielman Motor Sales Co. v. Dodge,* 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935); *Beal v. Missouri Pac. R. Co.,* 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); *Watson v. Buck,* 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941); *Wil-*

*liams v. Miller,* 317 U.S. 599, 63 S.Ct. 258, 87 L.Ed. 489 (1942); *Douglas v. City of Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); *Stefanelli v. Minard,* 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); *Cleary v. Bolger,* 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963); *Dombrowski v. Pfister,* 380 U.S. 479, 85

emphasizing at page 46, 91 S.Ct. at page 751 that "In all of these cases the Court stressed the importance of showing irreparable injury . . . In addition . . the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate'." Finally, at page 46, 91 S.Ct. at page 751 the Court stressed, quoting *Watson v. Buck,* 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941), that "Federal injunctions against state criminal statutes, either in their entirety or with respect to their separate prohibitions, are not to be granted as a matter of course, even if such statutes are unconstitutional."

The Supreme Court's recent opinion in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), explicitly states that the principles of *Younger v. Harris* apply equally to suits to enjoin pending appellate proceedings. In *Huffman,* after a discussion of its decision in *Younger,* the Supreme Court stated at page 608, 95 S.Ct. at page 1210 that "Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial. Intervention at the later state is if anything more highly duplicative, since an entire trial has already taken place, and it is also a direct aspersion on the capabilities and good faith of state appellate courts. Nor . . . is federal intervention at the appellate stage any the less of a disruption of the State's efforts to protect interests which it deems important. Indeed, it is likely to be even more disruptive and offensive because the State has already won a *nisi prius* determination that its valid policies are being violated in a fashion which justifies judicial abatement."

The Supreme Court further stated at page 609, 95 S.Ct. at page 1211 that " . . we do not believe that a State's judicial

system would be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts. We therefore hold that *Younger* standards must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not exhausted his state appellate remedies." Finally, at page 610, 95 S.Ct. at page 1211, the Court flatly declared " . . . we are of the opinion that the considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are not auspicious."

Plaintiff had not bothered to present his claim to the Puerto Rican courts when he instituted the present action and he has made no showing that they would not provide a hospitable forum for his constitutional attack on the application of the new appeal provisions to his appeal. In fact, plaintiff actually shows the opposite when he cites the decisions in the cases of *People v. Diaz,* 67 P.R.R. 74 (1947) and *People v. Lopez-Carrasquillo,* 70 P.R.R. 753 (1950), where ex post facto applications at least superficially analogous to the present case were found unconstitutional by the Supreme Court of the Commonwealth of Puerto Rico. In our opinion, it is clear that plaintiff has failed to meet the *Younger* standards which under *Huffman v. Pursue, Ltd.,* supra, must be met in order to justify our intervention in the ongoing state appellate proceedings. We therefore hold that he must raise his constitutional claims in said proceedings rather than in this Court.

Having found that the Court must dismiss the request for injunctive relief without addressing the merits of the constitutional claims we must equally dismiss the request for declaratory judgment since the same principles that govern the propriety of

---

S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Cameron v. Johnson,* 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *Dyson*

*v. Stein,* 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Gordils v. Maldonado,* 377 F.Supp. 1349 (DC PR 1974).

federal injunctions of state criminal proceedings govern the issuance of federal declaratory judgments in connection with such proceedings. As held by the Supreme Court in *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), " . . . in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and . . . where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well."[2]

In view of all of the above, plaintiff's complaint must be, and is hereby dismissed. The Clerk of the Court, in accordance with Rule 58 of the Federal Rules of Civil Procedure, is hereby directed to enter judgment dismissing the complaint and taxing costs to plaintiff.

IT IS SO ORDERED.

**2.** See also in this respect *Great Lakes Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); *Macauley v. Waterman SS. Corp.,* 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839 (1946); *Ott v. Mississippi Barge Line,* 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949); *Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); *Allegheny County v. Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); *Enochs v. Williams Packing Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); *Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971).