## SINKFIELD ET AL. *v.* KELLEY. ET AL.

No. 00–132.   Decided November 27, 2000*

PER CURIAM.

These cases involve a challenge to Alabama state legis-
lative districts under the equal protection principles an-

*Together with No. 00–133, *Bennett, Secretary of State of Alabama,
et al.* v. *Kelley et al.*, also on appeal from the same court.

nounced by this Court in *Shaw* v. *Reno,* 509 U. S. 630 (1993). Appellees, the plaintiffs below, are white Alabama voters who are residents of various majority-white districts. The districts in which appellees reside are adjacent to majority-minority districts. All of the districts were created under a state redistricting plan whose acknowledged purpose was the maximization of the number of majority-minority districts in Alabama. Appellants in No. 00–132 are a group of African-American voters whose initial state lawsuit resulted in the adoption of the redistricting plan at issue. Appellants in No. 00–133 are Alabama state officials.

Appellees brought suit in the United States District Court for the Middle District of Alabama challenging their own districts as the products of unconstitutional racial gerrymandering. A three-judge court convened to hear the case pursuant to 28 U. S. C. §2284. The District Court ultimately held that seven of the challenged majority-white districts were the product of unconstitutional racial gerrymandering and enjoined their use in any election. 96 F. Supp. 2d 1301 (MD Ala. 2000). On direct appeal to this Court pursuant to 28 U. S. C. §1253, appellants in both cases contend, among other things, that appellees lack standing to maintain this suit under our decision in *United States* v. *Hays,* 515 U. S. 737 (1995). We agree.

*Hays* involved a challenge to Louisiana's districting plan for its Board of Elementary and Secondary Education. The plan contained two majority-minority districts. The appellees lived in a majority-white district that bordered on one of the majority-minority districts. The appellees challenged the entire plan, including their own district, as an unconstitutional racial gerrymander under our decision in *Shaw* v. *Reno, supra. United States* v. *Hays,* 515 U. S., at 739–742.

We concluded that the appellees lacked standing to maintain their challenge. We assumed for the sake of argument that the evidence was sufficient to state a *Shaw* claim with respect to the neighboring majority-minority district. *Id.,*

at 746.   But we concluded that the appellees had not shown a cognizable injury under the Fourteenth Amendment because they did not reside in the majority-minority district and had not otherwise shown that they had *"personally* been denied equal treatment."   *Id.*, at 744–746 (internal quotation marks omitted).   The appellees' failure to show the requisite injury, we noted, was not changed by the fact that the racial composition of their own district might have been different had the legislature drawn the adjacent majority-minority district another way.   *Id.*, at 746.

Appellees' position here is essentially indistinguishable from that of the appellees in *Hays*.   Appellees are challenging their own majority-white districts as the product of unconstitutional racial gerrymandering under a redistricting plan whose purpose was the creation of majority-minority districts, some of which border appellees' districts. Like the appellees in *Hays*, they have neither alleged nor produced any evidence that any of them was assigned to his or her district as a direct result of having "personally been subjected to a racial classification."   *Id.*, at 745; see also *Shaw* v. *Hunt*, 517 U. S. 899, 904 (1996).   Rather, appellees suggest that they are entitled to a presumption of injury-in-fact because the bizarre shapes of their districts reveal that the districts were the product of an unconstitutional racial gerrymander.   See App. to Pet. for Cert. 120a, 148a, 153a.

The shapes of appellees' districts, however, were necessarily influenced by the shapes of the majority-minority districts upon which they border, and appellees have produced no evidence that anything other than the deliberate creation of those majority-minority districts is responsible for the districting lines of which they complain.   Appellees' suggestion thus boils down to the claim that an unconstitutional use of race in drawing the boundaries of majority-minority districts necessarily involves an unconstitutional use of race in drawing the boundaries of neighboring majority-white

districts. We rejected that argument in *Hays*, explaining that evidence sufficient to support a *Shaw* claim with respect to a majority-minority district did "not prove anything" with respect to a neighboring majority-white district in which the appellees resided. 515 U. S., at 746. Accordingly, "an allegation to that effect does not allege a cognizable injury under the Fourteenth Amendment." *Ibid.*

The judgment of the District Court is vacated, and the cases are remanded with instructions to dismiss the complaint.

*It is so ordered.*