John W. SANDERS, Perry L. Bridges, et al., Plaintiffs-Appellants,

v.

DOOLY COUNTY, GA, Terrell Hudson, in his official capacity as member of Dooly County Board of Commissioners, et al., Defendants-Appellees,

Dooly Co. NAACP, James L. Taylor, et al., Interveners-Defendants-Appellees.

No. 00-12850.

United States Court of Appeals,

Eleventh Circuit.

March 29, 2001.

Appeal from the United States District Court for the Middle District of Georgia. (No. 98-00412-CV-2-DF-5), Duross Fitzpatrick, Chief Judge.

Before BLACK, RONEY and COX, Circuit Judges.

PER CURIAM:

The plaintiffs, five voters in Dooly County, Georgia, sued county officials, claiming that a districting plan, shared by the county commission and the board of education and effectuated by consent decree, contains racially gerrymandered districts that violate the equal-protection principles announced in *Shaw v. Reno,* 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993), and elaborated in *Miller v. Johnson,* 515 U.S. 900, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995), and many cases since. The district court granted the defendants summary judgment on laches grounds. According to the court, the plaintiffs' waiting until November 1998 to file suit—over six years after the first use of the plan and five years after *Shaw v. Reno* issued—was an inexcusable delay. This delay prejudiced the defendants and citizens of Dooly County, the court concluded, in two principal ways: (1) redistricting late in the decade would lead to back-to-back redistrictings (the court-ordered one and the one using new census data) that would confuse voters and be unnecessarily costly to the County; and (2) the census data available to redistrict now are over ten years old and thus unreliable. The plaintiffs appeal.

Before reaching the merits of the appeal, we discharge our duty to examine the district court's jurisdiction, here questionable because two of the plaintiffs lack standing. *See Wilson v. Minor,* 220 F.3d 1297, 1303 n. 11 (11th Cir.2000). Beginning with *Louisiana v. Hays,* the Supreme Court has limited standing on this kind of equal-protection claim to residents of the challenged district. 515 U.S. 737, 738, 115 S.Ct. 2431, 2433, 132 L.Ed.2d 635 (1995). The plaintiffs do live in the districts they challenge, but since the

district court entered its judgment, the Supreme Court has further trimmed the number of proper *Shaw* plaintiffs by holding that the residents of intentionally racially gerrymandered districts have suffered no cognizable harm if the districts are not the ones the districting plan originally set out to create, even if those gerrymandered districts are indispensable to the racially motivated plan. *See Sinkfield v. Kelley,* --- U.S. ----, 121 S.Ct. 446, 447, 148 L.Ed.2d 329 (2000) (plaintiffs lacked standing because they did not live in the supermajority-minority districts of a max-black plan), *vacating for lack of standing Kelley v. Bennett,* 96 F.Supp.2d 1301, 1312-20 (M.D.Ala.2000) (finding after trial that intentional race-motivated gerrymandering produced some of the majority-majority districts challenged by plaintiffs who lived in them). The plaintiffs allege that the plan set out to create three majority-black districts. Taking that allegation as true (because standing did not come up below, the plaintiffs have had no opportunity to present evidence), it means that the plaintiffs who live in majority-white Districts 2 and 3, George C. Griggs and John W. Sanders, have suffered no cognizable harm from the alleged gerrymandering of their districts. The district court therefore lacked jurisdiction over their claims, for want of standing.

Turning to the merits, we conclude that the district court did not abuse its discretion in deeming the claims seeking injunctive relief to be laches-barred for the reasons that we described above. *Cf. Fouts v. Harris,* 88 F.Supp.2d 1351, 1353 (S.D.Fla.1999) (relying on similar laches reasoning to dismiss *Shaw* claims), *aff'd sub nom. Chandler v. Harris,* 529 U.S. 1084, 120 S.Ct. 1716, 146 L.Ed.2d 639 (2000). But we do think that the district court overstepped its discretion in judging the claims for declaratory relief to be similarly barred, because the third element of a laches defense—prejudice to the defendants from the unexcused delay—is missing. *See AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1545 (11th Cir.1986) (listing elements). None of the grounds for prejudice that the district court relied on applies to the plaintiffs' claims for a declaration that the 1992 plan violates the Equal Protection Clause. There is no risk of confusion from a redistricting, obviously; no burden to the county to redistrict; and no use of out-of-date census data. An effect of a grant of such declaratory relief could be to prevent the Attorney General from using the 1993 consent-decree plan as a baseline for retrogression analysis in the post-2000 census round of preclearance proceedings under § 5 of the Voting Rights Act,[12] but that effect is no more prejudicial to the defendants now

---

[1]42 U.S.C. § 1973c.

[2]*See Abrams v. Johnson,* 521 U.S. 74, 96, 117 S.Ct. 1925, 1938, 138 L.Ed.2d 285 (1997) (plan declared unconstitutional under *Shaw* may not serve as retrogression baseline); Office of the Assistant Attorney General, Civil Rights Division, Guidance Concerning Redistricting and Retrogression Under

than it would have been in 1993.

For the foregoing reasons, we (1) vacate the judgments against plaintiffs Griggs and Sanders; (2) affirm the summary judgment against the remaining plaintiffs on their claims for injunctive relief; (3) reverse the grant of summary judgment against the remaining plaintiffs on their claims for declaratory relief; and (4) remand for further proceedings and with instructions to dismiss Griggs's and Sanders's claims for want of jurisdiction.

VACATED IN PART;  AFFIRMED IN PART;  REVERSED IN PART;  REMANDED WITH INSTRUCTIONS IN PART.

---

Section 5 of the Voting Rights Act, 42 U.S.C.1973c, 66 Fed. Reg. 5412, 5413 (January 18, 2001) ("Absent ... a finding of unconstitutionality under *Shaw* by a federal court, the last legally enforceable plan will serve as benchmark for Section 5 review.");  *see also* 28 C.F.R. § 51.54(b)(1)(retrogression comparison under § 5 is with the last "legally enforceable" practice when existing practice is not "in effect" and otherwise unenforceable under § 5).