**Jimmy D. GILES, Plaintiff,**

v.

**John ASHCROFT, Attorney General, Defendant.**

**No. CIV.A. 02–0135(JDB).**

United States District Court, District of Columbia.

April 8, 2002.

Jimmy D. Giles, Pearl, MS, Plaintiff, pro se.

T. Christian Herren, Jr., Amy H. Nemko, Joseph D. Rich, U.S. Department of Justice, Civil Rights Division, Voting Section, Washington, DC, for Defendant.

### MEMORANDUM OPINION

BATES, District Judge.

This case arises from redistricting efforts in the State of Mississippi, which loses one congressional seat as a result of the 2000 Census. Plaintiff Jimmy D. Giles ("Giles") is a resident of Rankin County, Mississippi, who is running as an independent candidate in the upcoming November 2002 Congressional election. He filed an Amended Complaint (hereinafter "Complaint") against defendant Attorney General John Ashcroft on March 8, 2002, challenging the constitutionality of Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1994) (hereinafter "Section 5"), and seeking to prevent enforcement of the congressional redistricting plan adopted on February 26, 2002, by a three-judge federal court in the Southern District of Mississippi ("the federal court redistricting plan"). Giles requests that this Court order that Mississippi's congressional delegation be chosen by statewide at-large elections pursuant to Miss.Code Ann. § 23–15–1039. Presently before the Court is defendant's motion to dismiss plaintiff's Amended Complaint.

The Court concludes that Giles does not have standing to raise claims challenging Section 5 of the Voting Rights Act, and that those claims must also be dismissed on grounds of issue preclusion because a federal court in Mississippi has already ruled that Giles does not have standing to raise such claims. *See Giles v. Ashcroft,* No. 3:01CV392LN (S.D.Miss. Sept. 27, 2001). His challenge to the federal court redistricting plan must also be dismissed for lack of jurisdiction, including the absence of standing to bring that claim.

### BACKGROUND

**1. Section 5 of the Voting Rights Act**

In 1965, Congress passed the Voting Rights Act "to rid the country of racial discrimination in voting." *South Carolina v. Katzenbach,* 383 U.S. 301, 315, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966). Section 5 is a critical part of the Act, designed "to shift the advantage of time and inertia from the perpetrators of evil to its victim, by freezing election procedures in the covered areas unless the changes can be shown to be non-discriminatory." *Reno v. Bossier Parish Sch. Bd.,* 520 U.S. 471, 477, 117 S.Ct. 1491, 137 L.Ed.2d 730 (1997) (quoting *Beer v. United States,* 425 U.S. 130, 140, 96 S.Ct. 1357, 47 L.Ed.2d 629 (1976)). Section 5 requires covered jurisdictions to obtain an advance determination—known as "preclearance"—from either the Attorney General or a three-judge District Court for the District of Columbia that proposed changes in voting practices and procedures are not racially discriminatory before those changes can be implemented. Section 5 is a severe process aimed at preventing the implementation of changes in voting practices and procedures which in purpose or effect would "worsen the position of minority voters." *Reno v. Bossier Parish Sch. Bd.,* 528 U.S. 320, 324, 120 S.Ct. 866, 145 L.Ed.2d 845 (2000); *Allen v.*

*State Bd. of Elections,* 393 U.S. 544, 556, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). Nine states, including Mississippi, are "covered jurisdictions" within Section 5.

## 2. *The Amended Complaint*

Giles maintains that Mississippi no longer requires coverage under Section 5 because the vestiges of racism—such as poll taxes, white primaries, or literacy tests—no longer exist in the modern Mississippi of today. Complaint at ¶¶ 8–9. He alleges that the "[c]onditions of the 1960s not only represent a different time and a different climate of public opinion but also were the result of the attitudes and represent actions of a different generation." *Id.* at ¶ 11. It is his view that "[t]o continue the stigma of discrimination and repression which rightly attached to the public and legislature of that time and apply it to young Mississippians is unconscionable." *Id.*

Giles claims that Section 5 is unconstitutional because it only applies to certain selected states, and hence " 'non-covered' jurisdictions have more rights and are treated differently than 'covered' citizens." *Id.* at ¶¶ 12, 15, 42–43. Giles argues that because Mississippi is a covered jurisdiction under Section 5, Congress continues to "adjudicate [him] guilty or innocent as if a prisoner up for parole," thus amounting to an unconstitutional bill of attainder. *Id.* at ¶ 16. In sum, Giles contends that he "has experienced and continues to experience a bad reputation because of continued enforcement of Section 5 which falsely confirms the impression in the minds of others that he would act to harm his fellow black citizens." *Id.* at ¶ 44.

The Amended Complaint also challenges the redistricting plan adopted by a three-judge court in Mississippi. Giles alleges that "[t]he federal court plan promotes political apartheid by drawing a gerrymandered district (2nd Congressional District) based too much on race." *Id.* at ¶ 34. He contends that "District Two (2) is a gerrymandered district which adversely affects the other three (3) districts." *Id.* at ¶ 27.

## 3. *Recent Redistricting Litigation in Mississippi*

On December 21, 2001, a state court in Hinds County, Mississippi, adopted its own redistricting plan to be implemented upon preclearance from the Justice Department pursuant to Section 5. *Branch v. Clark,* No. G–2001–1777 W/4. Three citizens of Mississippi also brought suit in federal court in the Southern District of Mississippi late in 2001, seeking to enjoin the state court plan and asking the federal court to adopt a redistricting plan for the state. *Smith v. Clark.* Giles sought to intervene in the *Smith* case on January 9, 2002, but his motion was denied the next day. On February 19, 2002, the three-judge court in *Smith* struck down the state court redistricting plan in *Branch,* and on February 26, 2002, the federal court adopted its own redistricting plan for Mississippi.[1] One of the plaintiffs in *Branch v. Clark* sought to stay the federal court's ruling in *Smith v. Clark* until the United States Supreme Court could hear an appeal, but that request was denied on March 1, 2002, and the appeal remains pending before the Supreme Court at this time. After the three-judge court in *Smith v. Clark* adopted the federal court redistricting

---

1. The court explained: "[W]e concluded that it was necessary for us to assert our jurisdiction in order to ensure that an enforceable congressional redistricting plan was in place prior to the March 1, 2002 deadline for candidates to qualify for the 2002 congressional elections, because it appeared uncertain whether the state authorities would have a redistricting plan in place prior to that deadline." *Smith v. Clark,* 189 F.Supp.2d 529, 531 (S.D.Miss.2002).

plan, Giles filed his Amended Complaint in this Court on March 8, 2002 to challenge that plan.

This is not, however, the first time Giles has sued the Attorney General challenging the enforcement of Section 5 in Mississippi. On May 21, 2001—ten months before he filed his Amended Complaint here—Giles sued in the Southern District of Mississippi challenging the constitutionality of Section 5 and raising many of the points he makes here. *See Giles v. Ashcroft*, No. 3:01CV392LN (S.D.Miss. Sept. 27, 2001) ("Mississippi suit"). Both complaints allege that because Mississippi remains a covered jurisdiction under Section 5, Giles is treated differently from those who live in jurisdictions that are not covered. Both complaints also allege that Giles suffers economically, and both speak of degraded citizenship and negative stereotypes arising out of the enforcement of Section 5 in Mississippi. Indeed, the central contention in each complaint is that in modern-day Mississippi "there is no longer a basis for the [Voting Rights] Act."

On September 27, 2001, Chief Judge Tom S. Lee granted the Attorney General's motion to dismiss the Mississippi suit and denied Giles's subsequent motion to transfer the case to this Court.[2] Judge Lee found that "the District Court for the District of Columbia did not have jurisdiction over plaintiff's suit when it was filed, [thus] making transfer inappropriate." *Id.* at 4. Moreover, Judge Lee found that jurisdiction was not proper "in any district court because plaintiff did not have standing to support his constitutional challenges to the Voting Rights Act of 1965." *Id.*

2. *Giles v. Ashcroft*, 3:01CV392LN, at 1 (S.D.Miss. Sept. 27, 2001). Giles did not appeal either Judge Lee's dismissal of the complaint or Judge Lee's denial of the motion to transfer.

3. The Supreme Court explained in *Goosby* that "[a] claim is insubstantial only if its un-

## DISCUSSION

### 1. Three—Judge Court

■ The Amended Complaint requests that the Court convene a three-judge court to hear this case. Under 28 U.S.C. § 2284, a district court should convene a three-judge court when there is a challenge to the constitutionality of the apportionment of congressional districts "unless he determines that three judges are not required," 28 U.S.C. § 2284(b)(1), or that the claims are "wholly insubstantial." *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).[3] An individual district court judge may consider threshold jurisdictional challenges before convening a three-judge panel. *Gonzalez v. Automatic Emp. Credit Union*, 419 U.S. 90, 95, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974); *Wertheimer v. FEC*, 268 F.3d 1070, 1072 (D.C.Cir.2001) (lack of standing "is, of course, jurisdictional" and would not require a three-judge court).

The Court finds that convening a three-judge court to address Giles's claims in his Amended Complaint is unwarranted. As discussed below, Giles does not have standing to bring claims challenging the constitutionality of Section 5 of the Voting Rights Act; those claims are precluded by the decision in his prior Mississippi suit; this Court also does not have jurisdiction over Giles's constitutional challenge to the federal court redistricting plan in Mississippi; and Giles does not have standing to raise that claim either. Because Section 5 has been upheld repeatedly—and recently—by the United States Supreme Court,

soundness so clearly results from the previous decisions of this Court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." 409 U.S. at 518, 93 S.Ct. 854.

that challenge is entirely baseless and, as Judge Lee put it, "completely without merit." *Giles v. Ashcroft,* No. 3:01CV392WS, at 6 n. 6.[4] The Supreme Court's previous decisions upholding the Voting Rights Act have in effect foreclosed such challenges to Section 5, leaving no room for Giles's current challenges. Given that these threshold issues are controlling, a three-judge court is not warranted. *Wertheimer,* 268 F.3d at 1072.

### 2. *Section 5 of the Voting Rights Act*

Giles asks this Court to rule that Section 5 of the Voting Rights Act is unconstitutional and to enjoin its enforcement in Mississippi. However, he does not have standing to raise his constitutional challenges to Section 5. Moreover, he cannot relitigate the standing issue here since it was conclusively decided against him in his Mississippi suit.

### a. Standing to Challenge Section 5

█ In *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the Supreme Court laid out the elements needed to satisfy standing requirements for an actual "case or controversy" under Article III of the Constitution. To establish standing, a complainant must show (1) a personal "injury in fact" that is concrete and particularized and "actual or imminent, not conjectural or hypothetical," (2) a causal connection between this "injury" and the conduct complained of, *i.e.,* that the injury is "fairly traceable to the challenged action of the defendant," and (3) that it is "likely," rather than merely "speculative," that the injury will be redressed by the relief requested. 504 U.S. at 560–561, 112 S.Ct. 2130; *see also Valley Forge Christian College v. Americans United*

*for Separation of Church and State, Inc.,* 454 U.S. 464, 472–73, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Standing is a threshold inquiry that "in no way depends on the merits of the petitioner's contention that particular conduct is illegal." *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). The burden is on the party invoking federal jurisdiction—here, Giles—to establish all three elements of this standing test. *Id.* at 154.

█ The Court finds that Giles cannot establish the elements necessary to create standing to challenge the continued enforcement of Section 5 in Mississippi. The type of vague injuries that Giles alleges throughout his Amended Complaint—negative stereotypes, diminished economic opportunities, perceptions of continuing racism—even if true, could essentially affect anyone within a covered jurisdiction under the Voting Rights Act (more than 146 million people in nine states). That is simply not the type of personalized injury required to establish standing. *See Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 ("Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant."). Such abstract injuries, arguably felt by innumerable others as well, amount to general grievances that the Supreme Court has held do not constitute "injury in fact" for standing. *See Lujan,* 504 U.S. at 574–576, 112 S.Ct. 2130; *Los Angeles v. Lyons,* 461 U.S. 95, 101–102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (plaintiffs must demonstrate "a personal stake in the outcome"; "[a]bstract injury is not enough"). The

---

4. Judge Lee also concluded that a three-judge court was not necessary in Giles's Mississippi suit. *Id.* 189 F.Supp.2d 529, 531.

Amended Complaint alleges a series of broad injuries that could be experienced by most citizens of Mississippi, not Giles specifically.

The Amended Complaint also fails to allege a sufficient causal connection between those alleged injuries and the enforcement of Section 5 in Mississippi. Giles must show that "the injury is fairly traceable to the challenged action of the defendant." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. Here, there is nothing in the Amended Complaint that directly connects Giles's alleged injuries of second-class citizenship to the application of Section 5 or the conduct of defendant. Lack of economic opportunities and negative stereotypes can arguably be attributed to many different things beyond enforcement of the Voting Rights Act. Giles has not satisfied his burden of establishing a causal connection between the enforcement of Section 5 of the Voting Rights Act in Mississippi and his alleged injuries. Likewise, it is by no means apparent from the allegations of the Amended Complaint that the relief Giles requests—an injunction against enforcement of Section 5 in Mississippi—would be likely to redress the vague, general injuries of which he complains. Unable to establish the requisite injury in fact, to trace his alleged injuries to the enforcement of the Voting Rights Act in Mississippi, or to establish that those alleged injuries will be redressed by the relief he seeks, Giles does not have standing to bring this broad challenge to Section 5 of the Voting Rights Act.[5]

### b. Issue Preclusion

In Giles's earlier Mississippi suit against defendant Ashcroft, Chief Judge Lee not only dismissed the claims in full but also denied a motion to transfer the case to the District of Columbia because Giles did not have standing to bring his claims in any court. *See Giles v. Ashcroft,* No. 3:01CV392, at 2–3. The claims challenging the constitutionality of Section 5 in the Amended Complaint here mirror the claims raised in the previous Mississippi suit. Because the Voting Rights Act requires that challenges to the constitutionality of the Act must be brought exclusively in this District Court, Judge Lee found that he did not have jurisdiction to hear Giles's claims. More importantly, however, Judge Lee found that "[j]urisdiction was not proper in any district court because plaintiff did not have standing to support his constitutional challenges to the Voting Rights Act of 1965." *Id.* at 4. He stated:

> Plaintiff argues that he has suffered several types of injuries in fact based on the preclearance requirements of Section 5. Plaintiff alleges that the economy of Mississippi, which provides his livelihood, has been harmed by the stigma attached to Mississippi's status as a preclearance state. Further, Giles contends that he has been reduced to the level of second class citizen because the Mississippi legislature must ask for preclearance every time a change in the voting laws is proposed.... In plaintiff's first two allegations, he is simply attempting to use this court as a forum to

---

**5.** Giles asserts that "[t]he presumption of discriminatory intent that is inherent in Section 5 is now a bill of attainder or legislative punishment of persons for the acts of their forbears." Complaint at ¶ 22. This claim that Section 5 amounts to a Bill of Attainder proscribed by the Constitution is without merit. *See Local 28 v. EEOC,* 478 U.S. 421, 481 n. 50, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986) ("Petitioners also argue that 'the construction of Title VII adopted by the Court of Appeals has the effect of making the Civil Rights Act an unconstitutional bill of attainder, visiting upon white persons the sins of past discrimination by others.' We reject this contention as without merit.").

debate issues and air generalized grievances against the United States. In *Valley Forge*, the Supreme Court stated these are exactly the types of claims that are inappropriate for federal courts.... Plaintiff's claims neither raise an injury in fact nor show any causal connection between the alleged injuries and the challenged action.

*Id* at 5–6 (footnote and citations omitted). Giles did not appeal Judge Lee's decision. Because Judge Lee held that Giles did not have standing in *any* court to challenge Section 5 of the Voting Rights Act, defendant contends that Giles is precluded from relitigating that claim here.

 Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). To establish issue preclusion, one must show that:

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case.... Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Yamaha Corp. of America v. United States*, 961 F.2d 245, 254 (D.C.Cir.1992); accord *Hall v. Clinton*, 285 F.3d 74, 80 (D.C.Cir.2002). Issue preclusion applies fully to threshold jurisdictional issues. *See Durfee v. Duke*, 375 U.S. 106, 116, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). Indeed, a prior determination on standing "ranks amongst those questions of jurisdiction and justiciability not involving an adjudication on the merits whose disposition ... may preclude, or collaterally estop, relit-

igation of the precise issues of jurisdiction adjudicated." *Cutler v. Hayes*, 818 F.2d 879, 888 (D.C.Cir.1987). After a court determines that the parties before it were all parties to proceedings in a prior court, the "sole remaining inquiry is whether the issue presented in the two proceedings is substantially the same." *Id.* at 889. The merit of the earlier decision is not determinative, because "a valid jurisdictional judgment has preclusive effect even if erroneous." *Id.* at 888.

 Chief Judge Lee concluded that Giles did not have standing to bring his challenges to Section 5 in any jurisdiction, including the District of Columbia, finding that Giles had not shown any injury in fact or a causal connection between his alleged injuries and the enforcement of Section 5. Giles raises the same attacks on Section 5 in his Amended Complaint here that he raised in his Mississippi suit, including asking this Court to enjoin the enforcement of Section 5 in Mississippi. Given the earlier ruling, the Court finds that Giles is precluded from relitigating his challenge to Section 5 in this Court in an action against the same defendant.

The Court notes as well that Giles's claims involving Section 5 are entirely frivolous in light of overwhelming Supreme Court precedent. The Supreme Court has repeatedly upheld the constitutionality of Section 5 of the Voting Rights Act. *See Lopez v. Monterey County*, 525 U.S. 266, 282–285, 119 S.Ct. 693, 142 L.Ed.2d 728 (1999); *City of Rome v. United States*, 446 U.S. 156, 173–183, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980); *Georgia v. United States*, 411 U.S. 526, 535, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973); *South Carolina v. Katzenbach*, 383 U.S. 301, 334–335, 337, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966). In the last two years, the Supreme Court has favorably compared the Voting Rights Act with other remedial legislation, reiterating that the Voting Rights Act was a proper

exercise of Congressional authority and well within Congress's power under Section 2 of the Fifteenth Amendment. *See Bd. of Trustees v. Garrett,* 531 U.S. 356, 373, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (comparing the Voting Rights Act favorably to the Americans with Disabilities Act); *United States v. Morrison,* 529 U.S. 598, 626–627, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) (comparing the Voting Rights Act favorably to the Violence Against Women Act). Given the Supreme Court's repeated approval of the Voting Rights Act, and specifically Section 5, Giles's claims are insubstantial and without merit.

### 3. *The Federal Court Redistricting Plan*

Giles's Amended Complaint also challenges the redistricting plan drawn by the three-judge court in *Smith v. Clark,* 189 F.Supp.2d 529 (S.D.Miss.2002). The plan divides the state into four congressional districts after Mississippi lost one congressional seat following the 2000 census. Giles claims that the federal court redistricting plan is unconstitutional under *Shaw v. Reno,* 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993), because it contains a racially gerrymandered district. *See* Complaint at ¶¶ 29–35. He asserts that under the federal court redistricting plan, the Second District is "based too much on race," with African–American voters making up 59 percent of its voting age population. *Id.* at ¶¶ 34–35. He "challenges the constitutionality of the federal court plan on the basis [that] District Two is a gerrymandered district which affects adversely the other three districts." *Id.* at ¶ 27.

The Court finds that Giles does not have standing to challenge the federal court's redistricting plan. In *United States v. Hays,* 515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995), the Supreme Court held that citizens who do not live in the district subject to a racial gerrymandering claim lack standing to bring suit:

> Where a plaintiff resides in a racially gerrymandered district ... the plaintiff has been denied equal treatment because of the legislature's reliance on racial criteria, and therefore has standing to challenge the legislature's actions.... On the other hand, where a plaintiff does not live in such a district, he or she does not suffer those special harms, and any inference that the plaintiff has personally been subjected to a racial classification would not be justified absent specific evidence tending to support that inference. Unless such evidence is present, that plaintiff would be asserting only a generalized grievance against governmental conduct of which he or she does not approve.

515 U.S. at 744–745, 115 S.Ct. 2431 (citations omitted). The Court specifically rejected the argument "that anybody in the State" has a claim. *Id.* at 737, 115 S.Ct. 2431. Under the federal court redistricting plan, however, Giles does not live in the Second District; rather, he resides in Rankin County in the Third District—the district he seeks to represent in Congress. His claim is simply that the alleged racial gerrymandering of District Two also taints other districts. Under *Hayes,* however, Giles does not have standing to challenge the federal court redistricting plan on the grounds that it is racially gerrymandered.[6]

---

**6.** The Supreme Court has also held that white plaintiffs do not have standing to challenge allegedly racially gerrymandered districts adjacent to their home districts. The Court rejected standing arguments based on residence in oddly shaped districts neighboring racially gerrymandered districts:

> Appellee's suggestion thus boils down to the claim that an unconstitutional use of race in drawing the boundaries of majority-minority districts necessarily involves an unconstitutional use of race in drawing the boundaries of neighboring majority-white districts. We rejected that argument in

██ This Court, moreover, does not have jurisdiction to hear his challenge to the redistricting plan. Giles has not sued any party against whom this Court could order the relief requested. Simply put, Giles has sued the wrong party, Attorney General Ashcroft, in the wrong court. Neither Attorney General Ashcroft nor the United States are parties in *Smith v. Clark*, where the federal court drew up the redistricting plan that Giles challenges. The Justice Department will not play any role in preclearing, reviewing, implementing, or administering the challenged redistricting plan drawn by the federal court.[7] In fact, the *only* action Giles attributes to defendant Ashcroft in the entire Amended Complaint is that "[t]he Justice Department is controlled by Republican John Ashcroft," and that "Section 5 has become a political weapon, not a remedy to voter discrimination." Complaint at ¶ 30. That alone, however, hardly makes Attorney General Ashcroft a proper defendant in a challenge to the redistricting plan adopted by a federal court in Mississippi.

Any direct challenge to the state's method of electing its congressional delegation would require Mississippi election officials as parties. This Court cannot order the Attorney General of the United States to impose a certain redistricting plan for Mississippi or order him to force Mississippi to elect its congressional delegation in statewide at-large elections, as Giles seeks. The government with responsibility for enforcing Mississippi's congressional redistricting plan is Mississippi and its state election officials.[8] Hence, the "redressibility" needed to establish standing is lacking here. A ruling in Giles's favor would not redress his alleged injuries by enjoining the redistricting plan, ordering statewide at-large elections, or extending the candidate qualifying deadline, because any ruling here would not be binding on Mississippi state agencies or officers who are not parties to this action. *See Lujan*, 504 U.S. at 569, 112 S.Ct. 2130 (finding no standing where district court ruling "would not have remedied respondents' alleged injury anyway, because it would not have been binding upon the agencies [who] were not parties to the suit").

Nor would relief against defendant Ashcroft effect the federal court redistricting plan, which neither this Court nor the Attorney General can change. Certainly, this Court will not step in and overturn a redistricting plan drawn by not just one, but *three* federal judges in Mississippi. No authority exists for this Court to do so. That case is currently before the Supreme Court on direct appeal, and any relief as to that plan must come through that judicial review.

*Hayes,* explaining that evidence sufficient to support a *Shaw* claim with respect to a majority-minority district did not prove anything with respect to a neighboring majority-white district in which the appellees resided.
*Sinkfield v. Kelley,* 531 U.S. 28, 30, 121 S.Ct. 446, 148 L.Ed.2d 329 (2000) (*per curiam*). Thus, Giles's assertion that a gerrymandered Second District "adversely affects the other three districts" in Mississippi does not allege a cognizable injury.

7. *See, e.g., McDaniel v. Sanchez,* 452 U.S. 130, 138, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981) ("[T]he Act's preclearance requirement does not apply to plans prepared and adopted by a federal court to remedy a constitutional violation.").

8. In fact, the plaintiffs in *Smith v. Clark* brought suit against the Mississippi Secretary of State and asked the three-judge court for much of the same relief Giles requests in his Amended Complaint here—enjoining enforcement of the state redistricting plan, extending the qualifying deadline for candidates, and holding statewide at-large congressional elections—relief which the three-judge court rejected. *See Smith v. Clark,* 189 F.Supp.2d 529, 546–48.

■ Giles's candidacy for Congress may add an additional dimension to his claims that was not present in his Mississippi suit. The Amended Complaint alleges an inability to obtain signatures from qualified voters for submission by the March 1, 2000, candidate qualifying deadline. *See* Miss.Code Ann. § 23–15–359 (candidates for Congress must submit a petition of 200 signatures of qualified voters living in the candidate's home district). However, on February 26, 2002, the three-judge court adopted its redistricting plan for Mississippi. Giles concedes that he submitted 400 signatures to the Mississippi Secretary of State Election Division on February 19, 2002, more than a week before the candidate qualifying deadline, and that over 300 of those signatures were certified as qualified electors. Complaint at ¶ 47. Both the official list of candidates published on the Mississippi Secretary of State's website and Giles's own campaign website include Giles as an independent candidate for the United States House of Representatives.

Even assuming an "injury" sufficient to create standing, any such injury arising from the qualifying deadline is now moot. As the Supreme Court has explained, "[m]ootness has been described as the doctrine of standing set in a time frame: The requisite personal interest must exist at the commencement of the litigation (standing) and must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)

(citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)); *see also Gollust v. Mendell*, 501 U.S. 115, 126, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991) ("the plaintiff must maintain a 'personal stake' in the outcome of the litigation throughout its course."). When a plaintiff no longer has an injury, the Article III requirements of a case or controversy are no longer met. *Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1485 (10th Cir.1995). Here, Giles never suffered the requisite "injury" from Mississippi's qualifying deadline to create standing in the first place, but even if he somehow did, his claim became moot once he submitted a sufficient number of signatures to the Mississippi Secretary of State on February 19, 2002. Moreover, "the causal connection between the injury and the conduct complained of has to be fairly traceable to the challenged action of the defendant," and cannot be "the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Here, the independent action that causes Giles's "injury" is the deadline created by the Mississippi State Legislature, and the third parties that are not present here are the officials of Mississippi.[9]

## CONCLUSION

For the reasons stated above, the Court grants defendant's motion to dismiss the

9. As a candidate for Congress, Giles also contends that the federal court redistricting plan burdens his campaign as voters are not aware of which district or precinct they live in, which candidates are running in their district, and to whom they should contribute money. Complaint at ¶ 39. This "injury" also is insufficient to create standing. Even in states that are not covered by Section 5, there will be some initial and inevitable confusion for

all candidates and voters after states reapportion their districts every ten years. Giles has more than eight months to raise money, meet his potential constituents, and educate them on the issues. Any alleged "burden" and "confusion" stems *not* from the redistricting plan or even the Voting Rights Act, but from the requirement in Section 2 of the Fourteenth Amendment to reapportion.

Amended Complaint in its entirety. A separate order has been issued on this date.

### ORDER

For the reasons stated in the Memorandum Opinion issued on this date, it is hereby ORDERED that:

1. Defendant's motion to dismiss plaintiff's amended complaint is GRANTED.

2. Plaintiff's motion for a temporary restraining order and a preliminary injunction is hereby DENIED as moot.